Mark MARTIN, Guardian Ad Litem, et al., Appellants,

v.

UNITED STATES TRUST COMPANY OF NEW YORK, Trustee, Appellee.

No. 05–83–00623–CV.

Court of Appeals of Texas, Dallas.

March 5, 1985.

Rehearing Denied April 18, 1985.

Stuart C. Hollimon, Strasburger & Price, Dallas, Jim Mattox, Atty. Gen. of Texas, David R. Richards, Executive Asst. Atty. Gen., Lou McCreary, Asst. Atty. Gen., Austin, Fred Weldon, Asst. Atty. Gen., Kevin J. Keith, Wayne E. Lee, Bailey & Williams, Dallas, for appellants.

John L. Hauer, P.C., Michael Byrd, Clarice M. Davis, P.C., of Akin, Gump, Strauss, Hauer & Feld, Dallas, for appellee.

Before STEPHENS, VANCE and ALLEN, JJ.

STEPHENS, Justice.

Almost a century has passed since the Texas Pacific Land Trust issued its Certificate # 390, the only remaining outstanding certificate of the Trust, in the street name of Blake Brothers & Company, a stock brokerage house operating in Boston and New York. This suit is to determine the true owner of the certificate.

In 1885, the Texas and Pacific Railway went into receivership, only a few years after Texas had granted it millions of acres of public domain in return for its promise to build a railroad from Texarkana to El Paso. In 1887, a plan of reorganization was approved whereby a trust was created, known as the Texas Pacific Land Trust. The millions of acres of land were conveyed to the Trust which in turn issued its certificates bearing a par value of $100 each in

exchange for original certificates of deposit of the railroad.

In 1888, Blake Brothers, possessed of an aggregate amount of $50,000 of railway income and land grant bonds in various denominations and registered to thirteen different owners, presented to the Trust those bonds, endorsed in blank, in exchange for five Trust certificates of one hundred shares each. The new certificates were numbered 386 through 390 and were issued in the name of Blake Brothers & Company. Four of these five certificates were endorsed in blank by Blake Brothers and, between 1893 and 1902, tendered to the Trust for transfer. The whereabouts of Certificate # 390 remained a mystery until its discovery in 1977, some sixteen years after the State of Texas filed the present suit to escheat the certificate and its proceeds.

Although many diverse claims of ownership of Certificate # 390 have been made over the years, none, before this suit, has had any merit.

In 1930, several years before the Trust began paying its first dividends in 1936, the firm of Blake Brothers was dissolved. From 1936 to 1948, the Trust paid dividends on Certificate # 390 to the successors of Blake Brothers. In 1952, after an unsuccessful attempt to persuade the trustees of Texas Pacific Land Trust to issue a new certificate to replace Certificate # 390, the successors of Blake Brothers sued the trustees in New York for replacement of Certificate # 390, claiming that the original had been lost. The trial court denied relief, and, in 1954, the New York Court of Appeals affirmed the trial court's judgment. *Davis v. Fraser*, 307 N.Y. 433, 121 N.E.2d 406 (1954).

After Blake Brothers' successors lost in the New York courts, trustees for the Texas Pacific Land Trust initiated suit in Texas for construction of the trust, appointment of a custodian for Certificate # 390, the only remaining outstanding certificate, and for discharge. The successors to Blake Brothers again sought a determination of ownership of the certificate, this time in the Texas court, but lost in the trial court and lost on appeal in the Texarkana Court of Civil Appeals. *Davis v. Fraser*, 319 S.W.2d 799 (Tex.Civ.App.—Texarkana 1958, writ ref'd n.r.e.). In that case, the trial court appointed the Mercantile National Bank at Dallas as custodian of the certificate and directed the Texas Pacific Land Trust to transfer ownership of the certificate to the Mercantile National Bank as trustee.

On November 11, 1961, the State of Texas filed the present suit to escheat the certificate and its proceeds. The trial court appointed Mark Martin, a Dallas attorney, as guardian *ad litem* for all persons asserting a claim to Certificate # 390.

While the present suit lay dormant in the trial court, the successors to Blake Brothers were instrumental in obtaining passage of TEX.REV.CIV.STAT.ANN. art. 1358a (Vernon 1980) which purported to create in the record owner of a certificate of interest in a business trust a presumption of ownership of such certificate and to require payment to that record owner of all escrowed distributions. In *Jenckes v. Mercantile National Bank at Dallas*, 407 S.W.2d 260 (Tex.Civ.App.—Dallas 1966, writ ref'd. n.r.e.), we upheld the trial court's judgment, holding that, as applied to the facts, the statute was unconstitutional, being both retroactive and a legislative invasion of the province of the courts.

From 1966 until 1969, the present suit remained inactive. In April 1979, Wells Fargo & Company of San Francisco filed a petition in intervention and interpleader and tendered into court the original Certificate # 390. It was after this plea in intervention that the present litigants emerged.

The circumstances under which the original certificate was discovered are somewhat amazing. In 1969, the American Express Company sold all of the papers as well as other items which it had obtained through a series of acquisitions from the original Wells Fargo, formed in 1852 as a banking and express business, to Wells Fargo and Company of San Francisco which was interested in further clarifica-

tion and development of the early history of Wells Fargo.

Mr. Edward Munger, the officer of Wells Fargo and Company of San Francisco in charge of receiving and cataloguing the documents purchased from American Express, consisting of approximately four and one-half tons of paper, read a human interest article in the San Francisco Chronicle regarding a "$2 million missing bond" identified as "Texas Pacific Land Trust Bond Numbered 390" and realized that he had inventoried the certificate while cataloguing the papers. Upon investigation, he discovered the certificate which resulted in the interpleader action.

Found along with the certificate were three other documents: a $15,298.48 promissory note, dated May 8, 1896; a letter written by Allen McCulloh, dated May 3, 1897; and an old envelope, brown from age. From the ensuing investigation, the following facts were learned.

The May 8, 1896, promissory note was issued by the New York investment firm of Decker, Howell & Company, payable to the order of Joseph S. Decker, a partner in the firm. The note was non-interest-bearing, due and payable four months after its date. This note was endorsed by Decker to the order of J.R. DeLamar, a wealthy New York industrialist and mining magnate.

The letter found with the certificate was written by Allan McCulloh and sent on the letterhead of Alexander & Green, a New York City law firm, addressed to H.B. Parsons, Esq., of Wells Fargo & Company's bank at 63 Broadway in New York City. It acknowledged receipt of a letter from Parsons, the $15,298.48 note, and a "certificate for 100 shares of the Texas Pacific Land Trust, which note and stock are held by Captain DeLamar. I will at once take steps to collect this amount."

The discovery of these three documents prompted a further search. The officials of Wells Fargo knew that other papers from the Wells Fargo days had been pre-

served at the Huntington Library in San Marino, California. It was there that other correspondence between Mr. DeLamar and H.B. Parsons, who was once the cashier of the Wells Fargo Bank in New York, a position which would now equate with the presidency of the bank, was discovered. It was developed that Mr. Parsons was a confidant of and financial advisor to Mr. DeLamar. Those letters are in evidence in this case.

On January 4, 1980, after the certificate had been interpleaded into court, the DeLamar Estate intervened, claiming ownership of the certificate. In February of 1982, the heirs of Decker and Williams [1] intervened, contending that they were the owners of the certificate.

Trial was before a jury. At the conclusion of the trial, the court submitted only two special issues. Special Issue No. 1 asked the jury to determine whether the certificate was delivered as part payment of the note or as a pledge to secure the payment of the note. The jury answered that it was delivered as a partial payment of the note. The second special issue asked the jury to determine whether the certificate was delivered by Decker to Parsons on, before, or after September 8, 1896. The jury answered that it was delivered after September 8, 1896. On February 9, 1983, the court rendered judgment on the jury's verdict in favor of the DeLamar Estate.

On appeal, Mark Martin, guardian *ad litem*, asserts by four points of error that, as a matter of law, title to the certificate and its proceeds is vested in George R. Coughlan or his duly appointed successor as assignee for the benefit of creditors of Decker/Williams by virtue of a New York Supreme Court judgment; that there was no evidence or insufficient evidence that the certificate was delivered to DeLamar as partial payment of the note; that the trial judge erred by failing to instruct the jury

1. Joseph S. Decker and William A. Williams were partners of the firm of Decker, Howell and Company.

that pledge agreements may be made orally; and, in the alternative, that there was no evidence or insufficient evidence that the certificate delivered to Parsons by Decker was in fact Certificate # 390.

Appellant Decker/Williams, by seven points of error, contends that the jury's answer that Certificate # 390 was delivered as part payment of the debt was against the great weight and preponderance of the evidence; that there was no evidence or factually insufficient evidence to support the jury's answer to Special Issue No. 1; that the trial court erred by overruling Decker/Williams' motion for judgment notwithstanding the verdict because the evidence conclusively showed that the certificate was delivered as a pledge against the indebtedness evidenced by the note; that the trial judge erred by failing to give a clarifying instruction to a jury question; that the trial judge erred by failing to instruct the jury that a pledge agreement may be made orally and by an agent for either the lender or the borrower; that the trial judge erred by instructing the jury that they were to determine the existence of a pledge agreement by considering only written exhibits; and, finally, that the trial court erred by rendering judgment in favor of DeLamar because the certificate is the property of a New York assignee for the benefit of creditors of Decker, Howell and Company, and any beneficial interest is owned by the heirs of the assignor, Decker/Williams.

The State of Texas, appellant, contends in six points of error that the trial court erred by granting a motion for directed verdict that the State of Texas take nothing by its escheat action; by holding that the evidence conclusively established ownership of the certificate in either the DeLamar estate or the Decker/Williams estate; by holding that the evidence conclusively established that the certificate was never lost; by holding that the evidence conclusively established that the certificate was in the constant physical possession of DeLamar's custodians; and by submitting Special Issue No. 1.

These points of error present four general arguments for reversal: first, that there is no evidence or insufficient evidence to support the jury's answer to the first special issue; second, that the New York proceeding is binding and established title in the certificate as a matter of law; third, that the trial court erred in its supplemental instructions to the jury; and, finally, that a jury issue was necessary on the identity or authenticity of the certificate given Parsons by Decker. With these points of error in mind, we first review the evidence.

## THE EVIDENCE

The jury had before it the following evidence from which they found in response to the first special issue that Texas Pacific Land Trust Certificate # 390 was delivered to H.B. Parsons as part payment of the $15,298.48 note payable to J.R. DeLamar:

A. A non-interest-bearing promissory note executed by Decker, Howell & Co., payable to Jos. S. Decker, due and payable four months after date, dated May 8, 1896, endorsed by Decker to the order of J.R. DeLamar.

B. Texas Pacific Land Trust Certificate # 390, issued in the name of Blake Brothers and endorsed in blank.

C. A letter, dated August 13, 1896, from Parsons to Decker, requesting payment on the note.

D. A letter from Parsons to DeLamar, dated August 20, 1896, stating that Decker promises payments soon.

E. A letter from Parsons to DeLamar, dated September 9, 1896. This letter refers to several matters. One paragraph contains the statement: "D. tells me that he has seen all of his creditors, except one. That those seen are all willing to give him all necessary extension. He anticipates no difficulty with the one yet to be seen. He tells me also that he is making encouraging progress in the direction of obtaining more capital for his business, and finally he promises to do something in the way of a payment on account very soon."

F. Another letter from Parsons to De-Lamar, dated September 21, 1896. This letter also contains a paragraph referring to "D." and expresses hopes for collection.

G. A letter dated September 25, 1896, from Parsons to DeLamar concerning various matters, with the following postscript:

"P.S. I don't think I have told you that I have obtained some stock, worth perhaps seven or eight hundred dollars, from D. accepting it from him for the reason that at the moment he could not give me any cash. He is working hard to get his matters into better shape, and is quite hopeful of success. I feel sure that he will do something more just as soon as he can."

H. A letter dated April 9, 1897, to De-Lamar from Parsons with the following paragraph: "I stirred up Mr. Decker at the beginning of the month, but without any results so far. He is ill with the Grippe, and is confined to his house. He promised to come in and see me as soon as he is able to get up."

I. A letter from Alexander & Green of New York, dated May 3, 1897, addressed to Parsons, acknowledging receipt of Parson's letter transmitting the $15,298.48 note of Decker, Howell & Co. with a certificate for 100 shares of the Texas Pacific Land Trust, "which note and stock are held by Captain DeLamar. I will take steps to collect this amount."

J. Numerous documents from a proceeding in New York wherein Decker/Williams filed an assignment for the benefit of creditors, including an account signed by Alanson Fisher, Jr., as assignee, listing "100 Shares Texas Pacific Land Trust stock" in schedule of "Stocks and Bonds Held by Creditors as Security for Money Loaned" and listing J.R. DeLamar as a creditor in the amount of $15,197.87, secured by "100 shares Texas Pacific Land Trust Stock."

K. A letter from Parsons to DeLamar, dated January 26, 1901, reporting a conversation with McCulloh of the firm of Alexander & Green and stating that Parsons thought it was hopeless to get anything

from Decker himself and directing him to hunt up the assignee and to try to get the amount from him.

We conclude from our review of the evidence that appellants' no evidence points are without merit; thus, we need not discuss those points further.

■ The alternative points as to the factual sufficiency of the evidence deserve further consideration. Our standard of review of insufficiency of the evidence points is to consider all the evidence. When we find that the evidence is conflicting, we are not at liberty to substitute our view of the evidence for that of the jury; only if we conclude that the evidence is so against the great weight and preponderance as to be manifestly unjust may we disturb the jury's verdict and then only to the extent of remanding the case for a new trial. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

■ Although we consider the evidence weak, we conclude that in considering all the evidence and the inferences which could be drawn therefrom, there is some evidence from which the jury could find that the delivery of the certificate to Parsons constituted a partial payment on the note. First, the certificate was endorsed in blank and was negotiable by the holder; second, it was delivered to Parsons after Parsons had attempted to collect payments and after Decker had promised to make payments; third, Parsons had established a value of the certificate as $700–$800, a sum considerably below the total sum due; and, finally, Parsons' communication to DeLamar that he had obtained the stock, "accepting it from him for the reason that at the moment he could not give me any cash.... I feel sure that he will do something more just as soon as he can". This statement could be construed by the jury to mean that Decker had tendered the certificate as partial payment. This evidence is more than a scintilla, and is sufficient to sustain the jury's finding.

Furthermore, had the jury believed that the certificate was tendered as a pledge,

instead of a part payment, we conclude that the evidence would have supported that finding. Consequently, since the evidence would have supported either finding by the jury, their finding was not so against the great weight and preponderance of the evidence as to be manifestly unjust.

All of appellants' points of error as to no evidence and insufficiency of the evidence to support the jury's finding that Decker delivered the certificate to Parsons as part payment on the note are overruled.

## COLLATERAL ESTOPPEL

Appellants argue that, as a matter of law, title to the certificate was vested in George Coughlan or his successor as assignee for the benefit of creditors. Specifically, appellants contend that an 1899 New York judicial proceeding conclusively determined that the certificate was transferred as a security and not as partial payment of the note, and, thus, appellees are collaterally estopped to contest the issue. We disagree.

Mark Martin, the guardian *ad litem*, introduced into evidence an exemplified copy of the New York court records of the Decker, Howell & Company assignment for the benefit of creditors. The assignment was filed on July 12, 1897, but the assignee, Alanson Fisher, never posted the required bond and did not timely file an accounting. On November 22, 1898, the court removed Fisher as assignee, and, on December 9, 1898, Fisher filed an accounting of the estate. In Schedule C of his account, under the heading "Stocks and Bonds Held by Creditors as Security for Money Loaned," Fisher listed "100 shares of Texas Pacific Land Trust stock" at an estimated value of $700. Schedule D of the account, showing the "Secured Creditors of the firm of Decker, Company with the amount of the debt and the security held therefor," listed J.R. DeLamar at a Madison Avenue address and indicated that a debt of $15,197.87 to DeLamar was secured by 100 shares of Texas Pacific Land Trust stock.

Shortly after Fisher filed the accounting, a referee appointed by the court held a hearing, and Fisher testified that the schedules were correct. The referee concluded that Fisher was entitled to discharge from his responsibilities as assignee, and, on January 30, 1899, the New York Supreme Court confirmed the referee's report, stating that Fisher's discharge was "conclusive on creditor's appearing and others interested but not appearing after notice." From this sequence of events, appellants argue that appellees were estopped from contesting the nature of the transfer of the certificate.

Article IV of the United States Constitution requires us to give full faith and credit to the New York judicial proceedings. U.S. CONST. art. IV, § 1. Furthermore, "[a]cts, records and judicial proceedings ... shall have the same full faith and credit ... in every court within the United States ... as they have by law or usage in the courts ... from which they were taken." 28 U.S. C.A. § 1738 (West 1966); *Adam v. Saenger*, 303 U.S. 59, 62, 58 S.Ct. 454, 456, 82 L.Ed. 649 (1938); *State of Washington v. Williams*, 584 S.W.2d 260, 261 (Tex.1979); *Fuhrer v. Rinyu*, 647 S.W.2d 315, 317 (Tex.App.—Corpus Christi 1982, no writ). Accordingly, we must analyze New York law to determine the effect a New York court would give the New York order of discharge.

The applicability of collateral estoppel to a particular judgment or decree is a question of law. An authenticated copy of a foreign judgment raises a presumption of validity under the full faith and credit clause and is sufficient to establish a prima facie case for enforcement. *Mitchim v. Mitchim*, 518 S.W.2d 362, 364 (Tex.1975); *Hart v. Calkins Manufacturing Co., Inc.*, 623 S.W.2d 451, 453 (Tex.App.—Texarkana 1981, no writ); *Reiff v. McGuire*, 616 S.W.2d 349, 350–51 (Tex.Civ.App.—Texarkana 1981, no writ). The burden is on appellee to rebut the presumption. *Bannon v. Bannon*, 270 N.Y. 484, 1 N.E.2d 975, 978 (N.Y.1936). We hold that appellee has met its burden.

■ A party seeking to collaterally estop an adversary must establish that (1) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior action; (2) the issue decided in the first action was identical to the issue in the pending action; (3) the issue was actually litigated; (4) the opposing party had a full and fair opportunity to litigate the merits of the issue; and (5) the issue finally was determined on the merits and was necessary, essential, and material to the outcome of the prior action. *Weiss v. Feigenbaum,* 558 F.Supp. 265, 275 (E.D. N.Y.1982); *Shanley v. Callahan Industries, Inc.,* 444 N.Y.S.2d 585, 587, 54 N.Y.2d 52, 429 N.E.2d 104, 106 (N.Y.1981).

As a creditor of Decker, DeLamar arguably was a party to the prior proceeding, but the issues litigated were not identical. *See La Rocca v. Gold,* 662 F.2d 144, 148 (2d Cir.1981); *Kret By Kret v. Brookdale Hospital Medical Center,* 462 N.Y.S.2d 896, 901, 93 A.D.2d 449 (N.Y.App.Div.1983) *aff'd,* 473 N.Y.S.2d 970, 61 N.Y.2d 861, 462 N.E.2d 147 (N.Y.1984). Although the referee purported to verify the correctness of the accounts, the issue before him was whether to discharge Fisher as assignee, not whether the schedules correctly stated the debts of the company. The characterization of the transfer of the certificate never was litigated; thus, appellee never was afforded a full and fair opportunity to litigate the merits of the issue, *see La Rocca,* 662 F.2d at 148, and, in fact, was not given notice that the proceeding would involve a final determination of the status of the transfer of the certificate. *See Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306, 314–15, 70 S.Ct. 652, 657–58, 94 L.Ed. 865 (1950). ("A fundamental requirement of due process of law in any proceeding which is to be accorded finality is notice reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections; ....."); *Bennett v. Bird,* 261 N.Y.S. 540, 542, 237 App.Div. 542 (N.Y.App.Div. 1933) (person does not become party to

action by mere naming in title thereof but only by service of process).

■ Furthermore, the referee's pronouncement cannot be accorded collateral estoppel effect because it was not necessary to the resolution of the proposed discharge. *See Tucker v. Arthur Andersen & Co.,* 646 F.2d 721, 728 (2d Cir.1981); *Neaderland v. Commissioner of Internal Revenue,* 424 F.2d 639, 642 (2d Cir.), *cert. denied,* 400 U.S. 827, 91 S.Ct. 53, 27 L.Ed.2d 56 (1970); *Manitou Sand & Gravel Co. v. Town of Ogden,* 440 N.Y.S.2d 140, 141, 81 A.D.2d 1019 (N.Y.App.Div.), *rev'd on other grounds,* 447 N.Y.S.2d 250, 55 N.Y.2d 790, 431 N.E.2d 975 (N.Y.1981). Additionally, a final judgment is an essential prerequisite to invocation of the doctrine of collateral estoppel. *Wilson v. Steinhoff,* 718 F.2d 550, 552 (2d Cir.1983); *Bannon v. Bannon,* 270 N.Y. 484, 1 N.E.2d 975, 978 (N.Y.1936); *Dutcher v. Town of Shandaken,* 470 N.Y.S.2d 767, 768–69, 97 A.D.2d 922 (N.Y.App.Div.1983). The object of an assignment proceeding is to settle and adjudicate accounts and claims presented to the court, to decree payment, and to distribute the funds. *In re Morgan,* 99 N.Y. 145, 1 N.E. 406, 407 (N.Y.1885). Thus, the order discharging Fisher was not a final judgment but merely an interlocutory or provisional remedy without collateral estoppel effect. We overrule appellants' points of error.

## SUPPLEMENTAL JURY INSTRUCTION

Appellants argue that the trial judge improperly responded to the jury's request for an additional instruction and improperly refused their requested response to the jury's post-submission question. We disagree.

The instruction accompanying Special Issue No. 1 stated as follows:

In connection with Question No. 1, you are instructed that in order for property to be a pledge, both the borrower and the lender must agree that the lender will keep the property until the loan is repaid and that the property will be returned to

the borrower when the loan has been repaid.

After retiring to begin deliberations, the jury sent the trial court the following question:

In this case and in regards to Question *One*, what would constitute an agreement for a *Pledge* and where within the documents presented might we find evidence of an agreement.

The trial court submitted the following reply:

Answer: Please read the Charge of the Court carefully. You will note that this case is submitted to you on questions about the facts which *you* must decide from all the evidence that was admitted in the trial of this cause. At this stage of the trial, the Court is not permitted to comment upon the evidence or advise you as to what consideration, weight or credibility you will give said evidence. You must consider all the evidence and only the evidence introduced here in these proceedings under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the Court.

Remember, in answering the special issues or questions, your answers are to be based upon a preponderance of the evidence. With the instructions of the Court and the definitions therein contained in mind, you are to answer the questions as you have heretofore been instructed.

■ Appellants complain, first, that the supplemental instruction submitted was so general, vague, and equivocal as to be meaningless and that it improperly instructed the jury to determine the existence of a pledge agreement by considering only the written exhibits. We disagree. TEX.R.CIV.P. 286 provides that, "[a]fter having retired, the jury may receive further instructions of the court touching any matter of law...." "[I]n some cases it may be the duty of the court to give additional instructions ... to assist the jury to a better comprehension of instructions previously given." *Traders & General Insur-*

*ance Co. v. Carlile*, 138 Tex. 523, 161 S.W.2d 484, 487 (1942); *Texas Employers' Insurance Assn. v. Webb*, 660 S.W.2d 856, 856 (Tex.App.—Waco 1983, writ ref'd n.r. e.); *Taylor v. Lewis*, 553 S.W.2d 153, 159 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). Thus, the court properly submitted a clarifying instruction, and we hold that the instruction submitted, although general, was sufficiently responsive to the jury's question. We disagree with appellants' contention that the instruction misstated the law by informing the jury that evidence of a pledge must be found among the written documents. The court simply instructed the jury to answer the special issue by evaluating all the evidence, and the instruction did not proscribe an inference, based on the documentary evidence, of an oral pledge. Accordingly, we hold the instruction, although broad, was not reasonably calculated to cause and did not cause rendition of an improper verdict. TEX.R.CIV.P. 434.

■ Appellants attempted to validate their contention that the jury was erroneously reading the original instruction as requiring written evidence of a pledge agreement and that the supplemental instruction reinforced this misapprehension by introducing, in connection with their motion for new trial, the testimony of two jurors. We hold that this evidence was improperly admitted.

■ Misconstruction of the court's charge that does not bring to the attention of the jury law or facts outside the record is not misconduct within the meaning of TEX.R.CIV.P. 327. *Compton v. Henrie*, 364 S.W.2d 179, 184 (Tex.1963); *Whited v. Powell*, 155 Tex. 210, 285 S.W.2d 364, 367 (1956); *Hoffman v. Deck Masters, Inc.*, 662 S.W.2d 438, 443 (Tex.App.—Corpus Christi 1983, no writ); *Taylor v. Lewis*, 553 S.W.2d 153, 160 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). Furthermore, a jury verdict may not be impeached by evidence of the mental processes used to arrive at the verdict. TEX.R.CIV.P. 327; *Elston v. Sherman Coca-Cola and Dr. Pepper Co.*, 596 S.W.2d 215, 225 (Tex.Civ.App.—Texarkana

**310**

1980, no writ); *Schrader v. Artco Bell Corp.*, 579 S.W.2d 534, 541 (Tex.Civ.App.— Tyler 1979, writ ref'd n.r.e.); *Norman v. First Bank & Trust, Bryan*, 557 S.W.2d 797, 805 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.).

Appellants challenge, additionally, the failure of the court to submit the following requested supplemental instruction:

> You are further instructed that such an agreement may be in writing or made orally, and may be made by or for one acting on behalf of either the lender or borrower.

The failure of the court to submit a definition or explanatory instruction does not mandate reversal unless a substantially correct instruction has been requested in writing and tendered to the court. TEX.R. CIV.P. 279; *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 538 (Tex.1981); *Durham v. Uvalde Rock Asphalt Co.*, 599 S.W.2d 866, 874 (Tex.Civ.App.—San Antonio 1980, no writ). The requested instruction was not substantially correct because it purported to inform the jury that either party to a transaction unilaterally could create a pledge relationship, thereby conflicting with the correct definition of "pledge" originally submitted to the jury. Accordingly, we hold that the trial court correctly refused to submit the requested supplementary instruction.

### IDENTITY OF CERTIFICATE # 390

The State of Texas and the guardian *ad litem* argue that the court erred by assuming that Certificate # 390 was the certificate transferred from Decker to DeLamar. The State additionally argues that the court erred by refusing the following requested special issue:

> Do you find by a preponderance of the evidence that Decker owned Certificate 390 Texas Pacific Land Trust on or after September 8, 1896?
>
> Answer: "Yes" or "No"

To preserve inviolate the right of trial by jury, TEXAS CONST. art. 1, § 15, a trial judge must submit, upon request, any and all controlling issues raised by the pleadings and evidence. An undisputed proposition of fact, however, need not be submitted. *Sullivan v. Barnett*, 471 S.W.2d 39, 44 (Tex.1971); *Commercial Insurance Co. of Newark, New Jersey v. Smith*, 596 S.W.2d 661, 664 (Tex.Civ.App. —Fort Worth 1980, writ ref'd n.r.e.); *James v. Haupt*, 573 S.W.2d 285, 288 (Tex. Civ.App.—Tyler 1978, writ ref'd n.r.e.). Thus, if reasonable minds cannot differ as to the truth of a controlling factual proposition, failure to submit an issue inquiring of that proposition is not error. *Jones v. Tarrant Utility Co.*, 638 S.W.2d 862, 865 (Tex. 1982); *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978); *Wynn v. Mid-Cities Clinic*, 628 S.W.2d 809, 810 (Tex.App.—Texarkana 1981, writ ref'd n.r.e.). On appeal, we must consider the evidence in the light most favorable to the party who received the adverse ruling and disregard all contrary evidence and inferences to determine whether any evidence of probative force raises a fact issue on the material question submitted. *Jones*, 638 S.W.2d at 865; *Collora*, 574 S.W.2d at 68; *Torres v. Chrysler Credit Corp.*, 655 S.W.2d 249, 250 (Tex. App.—Corpus Christi 1983, no writ); *Salinas v. Flores*, 583 S.W.2d 813, 815 (Tex.Civ. App.—San Antonio 1979, writ dism'd). A mere scintilla of evidence or evidence raising only a surmise or suspicion of the existence of fact is insufficient. *Rounsaville v. Bullard*, 154 Tex. 260, 276 S.W.2d 791, 794 (1955); *Briargrove Shopping Center Joint Venture v. Vilar, Inc.*, 647 S.W.2d 329, 332 (Tex.App.—Houston [1st Dist.] 1982, no writ); *Hodge Boats & Motors v. King*, 578 S.W.2d 890, 891 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.).

The State concedes that Decker gave DeLamar a Texas Pacific Land Trust certificate but argues, in essence, that the Wells Fargo files only coincidentally contained Certificate # 390 and that the cataloguer discovered Certificate # 390 among the voluminous materials and placed it in the envelope marked by H.B. Parsons as the "Property of J.R. DeLamar." We hold that the State's theory was speculative and

wholly unsupported by the evidence. The undisputed evidence reveals that Decker gave Parsons a Texas Land Trust certificate, that Parsons was president of the Wells Fargo Bank in New York in the late nineteenth and early twentieth centuries, and that Parsons acted as DeLamar's agent in the collection of the Decker debt. The undisputed evidence further reflects that Certificate # 390, the $15,298.48 note, and a letter from Allan McCulloh to H.B. Parsons referencing the note and the certificate, were among bank records purchased by Wells Fargo & Company of California in 1969. Certificate # 390 was discovered in an envelope, stamped May 3, 1897, and carrying the handwritten, scratched-out notation, "Handed to Mr. Allan McCulloh for collection." The envelope also contained a promissory note in the amount of $15,298.48 payable to the order of Joseph Decker and endorsed to J.R. DeLamar and a letter from Allan McCulloh, dated May 3, 1897, acknowledging receipt of the note and a certificate for 100 shares of the Texas Pacific Land Trust.

No evidence was introduced to prove that the Wells Fargo files contained more than one certificate or that a certificate other than Certificate # 390 was missing. Decker's financial records indicate ownership of only one certificate and further reveal that the certificate was for 100 shares, the denomination of Certificate # 390. Accordingly, we hold that the State's contention is purely speculative and thereby insufficient to support a jury issue.

The judgment of the trial court is affirmed.