**Charles R. OLIVER, Appellant,**

v.

**Michael D. MARSH, Appellee.**

No. 12–93–00172–CV.

Court of Appeals of Texas,
Tyler.

April 28, 1995.

Rehearing Overruled June 6, 1995.

**354**

Patricia Ann Hancock, Houston, Joe Griffith, Crockett, for appellant.

Frederick F. Hoelke, Houston, William R. Pemberton, Crockett, Olney G. Wallis, Houston, for appellee.

HADDEN, Justice.

Charles R. Oliver appeals from a judgment awarding Michael D. Marsh $180,362.00 in compensatory damages for injuries he sustained when he fell from the top of a storage shed owned by Oliver. We will affirm.

In his first three points of error, Oliver challenges the legal and factual sufficiency of the evidence to support the jury's findings that there was a latent defect, that Oliver was negligent, and that it was the proximate cause of Marsh's injuries. In his last three points of error, Oliver complains that the court erred in refusing to submit requested special questions with explanatory instructions on the issues of independent contractor, possessor of land, and business invitee. The injuries and damages to Marsh, though contested during trial, are not contested in this appeal.

Marsh was an employee of Travel Quest, Inc., a corporation located in Crockett, Texas, owned by Oliver, who was President, and his wife. Travel Quest was in the business of custom conversion of passenger vans for resale. The Olivers also owned and lived on an 80 acre farm located about one-half mile out of Crockett. On the farm was a 10 foot high wooden shed, measuring about 25 × 40 feet with a tin roof. The shed was used by Oliver to store hay and farm equipment, but was also used by Travel Quest to store seats taken out of vans.

The employees of Travel Quest, including Marsh, were paid "piecemeal," that is, a specific amount for each van completed. However, when business was slow at the Travel Quest assembly line, and in order to keep his employees working, Oliver would offer other jobs to his employees which sometimes included work on his farm, and they were paid by Travel Quest on an hourly wage basis.

On the occasion in question, Oliver had decided to move the shed on his farm to another location so that Travel Quest could park surplus van chassis on the farm in the cleared area. Employees of Travel Quest

were to be used to do this work. Oliver did not reimburse Travel Quest for the expense of using the employees for personal use on his farm, but Oliver considered it a trade-out because at times Oliver would use his tractor and equipment to take care of Travel Quest premises in town. Immediately prior to the start of the dismantling of the shed, Oliver and Johnny Frank Commander, the carpentry supervisor at Travel Quest, inspected the shed to determine whether the lumber could be reused to rebuild the shed at the new location. They found no rotten or defective boards except those which were next to the ground.

On June 27, 1985, the day of the incident, Marsh and other Travel Quest employees, pursuant to the offer of work, reported to the farm and began to disassemble the shed. Tools were furnished by Travel Quest, and the workers were under the supervision of Commander, a fellow Travel Quest employee. While Marsh was working on the roof of the shed, the ridge pole broke and Marsh fell to the ground and was severely injured.

Three questions were submitted to the jury and answered favorably to Marsh. Oliver contends they were not supported by the evidence. The questions and the jury's answers were:

**QUESTION NO. 1**

On the occasion in question, was there a latent defect in the shed in the form of a rotten rafter?

Answer "Yes" or "No"

Answer: YES

If you have answered Question No. 1 "Yes," and only in that event, then answer the following question.

**QUESTION NO. 2**

"Ordinary care" when used with respect to an owner or occupier of a premises, means that degree of care which would be used by an owner or occupier of ordinary prudence under the same or similar circumstances.

"Negligence" when used with respect to an owner or occupier of a premises, means failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the owner or occupier knows about or in the exercise of ordinary care should know about.

Answer "Yes" or "No" for each of the following:

a. Charles R. Oliver YES

b. Michael D. Marsh YES

If, in answer to Question No. 2, you have found that the negligence of more than one of the persons named below proximately caused the occurrence, then answer the following question. Otherwise, do not answer the following question.

**QUESTION NO. 3**

What percentage of the negligence that caused the occurrence do you find to be attributable to each of those found by you, in your answer to Question No. 2, to have been negligent?

The percentages you find must total 100 percent. The negligence attributable to a person below is not necessarily measured by the number of acts or omissions found.

a. Charles R. Oliver 70

b. Michael D. Marsh 30

TOTAL 100%

■ The standard of review for legal sufficiency of the evidence is that we must examine the evidence in the light most favorable to the verdict to determine whether there is any probative evidence or reasonable inferences to be drawn therefrom which supports the finding, and we must disregard all evidence or inferences to the contrary. *Raw Hide Oil & Gas, Inc. v. Maxus Expl. Co.*, 766 S.W.2d 264 (Tex.App.—Amarillo 1988, writ denied). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *In re DeVine*, 869 S.W.2d 415 (Tex.Civ.App.—Amarillo 1993, writ denied). The standard of review for a factual sufficiency challenge requires us to set aside the verdict only if the evidence is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175 (Tex.1986).

■ Upon examining the trial record, it appears that Marsh testified that after he fell, he saw and described a defect in the

board which were "bumblebee holes" on the bottom side of the board that broke, where bumblebees had apparently eaten the board; that he could not see them from the top of the board where he was sitting before he fell. After Marsh fell, he was taken to the hospital, but the work continued on dismantling and rebuilding of the shed. According to counsel during oral arguments, the offending board is probably somewhere in the reassembled shed, for no one had the presence of mind to closely examine it and save it for such an occasion as a trial. However, there is no evidence to dispute Marsh's testimony. Other witnesses testified that they did not observe bumblebee holes in other boards taken from the shed, but no one could specifically direct their testimony to the offending board. Marsh's credibility was a matter to be judged by the jury.

Oliver and Commander, regarding their inspection of the shed, testified that they did not notice any such defect as bumblebee holes which was on the side of the board visible to them during their inspection. However, Oliver's five minute cavalier inspection did not include the underside of the roof where the ridgepole was located, but was simply a walk-through to determine if the boards on the barn could be reused. The inspection was made without the benefit of either a ladder or a flashlight. From this evidence, the jury could very well have concluded that the "bumblebee holes" were visible, that Oliver either knew or should have known about this condition.

For the above reasons, we hold that the evidence was legally and factually sufficient to support the jury findings. Points of errors one, two, and three are overruled.

■ In point four, Oliver claims that the trial court erred in refusing to submit his requested instructions and question on the issue of Travel Quest's status as an independent contractor. The requested instruction was:

> On the occasion in question, was Travel Quest, Inc. acting as an independent contractor for Charles R. Oliver?

An "employee" is a person in the service of another with the understanding, express or implied, that the such other person has the right to direct the details of the work and not merely the result to be accomplished. A person is not acting as an employee if he is acting as an independent contractor. An "independent contractor" is a person who, in pursuit of an independent business, undertakes to do specific work for another person, using his own means and methods without submitting himself to the control of such other person with respect to the details of the work, and who represents the will of such other person only as to the result of his work and not as to the means by which it is accomplished.

Answer "Yes" or "No"

Answer: _____

Marsh responds that the question was properly rejected since it was not in substantially correct form.

Marsh had asserted in his petition that he was employed by Travel Quest, which was functioning as an independent contractor for Oliver when his injury occurred as a result of Oliver's negligence. In his answer, Oliver asserted his individual workers' compensation policy as a defense to Marsh's negligence claim. He maintained that Marsh was an employee of *Oliver*, rather than Travel Quest, and that Marsh's sole remedy was a worker's compensation claim pursuant to TEXAS REVISED CIVIL STATUTES ANN. art. 8306, § 3(a) (Vernon Supp.1987).[1] Oliver argues that the requested issue should have been submitted since his workers' compensation defense was dependent upon the determination of whether Marsh was employed directly by Oliver or by Travel Quest.

We hold that the requested issue was not submitted in substantially correct form since it would not have affirmatively established Marsh's employment status. Rule 278 of the TEXAS RULES OF CIVIL PROCEDURE states that "failure to submit a question shall not be deemed a ground for reversal of a judgment, unless its submission *in substantially correct wording,* has been requested ... by the party complaining of the judgment ... [if that

---

1. Now TEX.LAB.CODE ANN. § 408.001 (Vernon Supp.1995).

party has the burden of proof on the question]." TEX.R.CIV.P. 278; *see also Bauer v. Estate of Bauer*, 687 S.W.2d 410, 411 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.).

The issue tendered by Oliver properly defined "employee" and "independent contractor," but only asked the jury to determine whether *Travel Quest* was an independent contractor of Oliver. This question is incorrect for two reasons. First, it would not have directly established Marsh's employment status. Second, it presents an inferential rebuttal issue in the form of a question. The allegation that a person or entity is an independent contractor is an inferential rebuttal to the existence of an employee relationship. Comment, 1 STATE BAR OF TEXAS, *Pattern Jury Charges, PJC* 6.08 (1987). When a party alleges an inferential rebuttal issue, he is only entitled to the submission of an instruction, rather than a question, on the issue. *Linden–Alimak, Inc. v. McDonald*, 745 S.W.2d 82, 84 (Tex.App.—Fort Worth 1988, writ denied); *see* TEX.R.CIV.P. 277. Therefore, Oliver would have been allowed an instruction on the issue of independent contractor status.

A substantially correct question would have inquired whether Marsh was acting as an employee of Oliver on the occasion in question. 1 STATE BAR OF TEXAS, *Pattern Jury Charges, PJC* 6.05 (1987). Oliver failed to do this in his requested question. Hence, we conclude that the requested question of Travel Quest's status as an independent contractor was not in proper form since it would have failed to determine Marsh's employment status. TEX.R.CIV.P. 277 & 278. Appellant's point of error number four is overruled.

█ In points five and six, Oliver contends that the trial court erred in refusing to submit his requested instructions and questions on the issues of: (1) whether Oliver was possessor of the land, and (2) whether Marsh was an invitee on the part of Oliver. The requested instructions were:

> On the occasion in question, was Charles R. Oliver the possessor of the premises in question with the right to used and occupy the same?

A "possessor" of land is

(a) a person who is in occupation of the land with intent to control it, or

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under clauses (a) and (b).

Answer "Yes" or "No"

Answer: _____

> On the occasion in question, was Michael D. Marsh an invitee on the part of Charles R. Oliver?

An "invitee" is a person who is on the premises at the express or implied invitation of the possessor of the premises and who has entered thereon for a purpose connected with the business of the possessor that does or may result in their mutual economic benefit.

Answer "Yes" or "No"

Answer: _____

Marsh replies that the requests for submission were properly denied since the facts surrounding these issues were uncontroverted. We agree.

Undisputed propositions of fact need not be submitted to the jury. *Mrs. Baird's Bakeries, Inc. v. Roberts*, 360 S.W.2d 850, 853 (Tex.Civ.App.—Eastland 1962, writ ref'd n.r.e.). If reasonable minds cannot differ as to the truth of a controlling factual proposition, it is proper for the trial court to refuse to submit an inquiry about that proposition. *Martin v. United States Trust Co. of New York*, 690 S.W.2d 300, 310 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); *Winn–Dixie Texas, Inc. v. Buck*, 719 S.W.2d 251, 253–54 (Tex. App.—Fort Worth 1986, no writ), *overruled on other grounds, Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 940 (Tex. 1990).

Oliver claims in point five that the "possessor" issue should have been submitted since the evidence raised a fact issue as to whether Oliver actually possessed the land on which the injury occurred. Restatement (Second)

of Torts, section 328E (1965), defines "owner or occupier" in terms of "possessor":

A possessor of land is

(a) a person who is in occupation of the land with intent to control it, or

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under clauses (a) and (b).

*Id.*

We hold that the evidence is uncontroverted that Oliver was the "possessor" of the property, as that term is defined in Section 328E(a) of the RESTATEMENT (SECOND) OF TORTS. The record reflects that Oliver owned and lived on the land on which the shed was located. None of the evidence at trial indicated that Travel Quest or any other entity occupied the land with intent to control it. Although Oliver permitted Travel Quest to store chassis on the land, he still retained possession, control and ownership of the property. In fact, the record reflects that Oliver later constructed a house for his wife's parents upon the former location of the shed. Oliver also admitted that his own residence was located on the land, and that he paid the property taxes. The evidence indisputably proved that Oliver possessed the land; therefore, the trial court did not err in refusing to submit the requested issue to the jury.

■ In point six, Oliver claims that the "invitee" issue should have been submitted since the evidence raised a fact issue regarding Marsh's status at the time of his injury. In a negligence suit, the duties owed by a premises owner depend upon the status of the person injured. *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 536 (Tex.1975); *Cameron County v. Velasquez,* 668 S.W.2d 776, 781 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.); *see also Adam Dante Corp. v. Sharpe,* 483 S.W.2d 452, 454–55 (Tex.1972). Generally, an owner or occupier of land has a duty to use reasonable care to keep the premises under his control in a safe condi-

tion. *Redinger v. Living, Inc.,* 689 S.W.2d 415, 417 (Tex.1985); *Smith v. Henger,* 148 Tex. 456, 226 S.W.2d 425, 431 (1950); *see also, Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 324–25 (Tex.1993). However, if a plaintiff is an invitee, the premises owner or occupier has a duty to keep the premises in a reasonably safe condition and to inspect the premises to discover any latent defects and to make safe any defect or give adequate warning. *Adam Dante Corp.,* 483 S.W.2d at 454–55; *H.E. Butt Grocery Co. v. Godawa,* 763 S.W.2d 27, 29 (Tex.App.—Corpus Christi 1988, no writ). An "invitee" is "one who enters on another's land with the owner's knowledge and for the mutual benefit of both." *See Rosas,* 518 S.W.2d at 536; *Graham v. Atlantic Richfield Co.,* 848 S.W.2d 747, 751 (Tex.App.—Corpus Christi 1993, writ denied).

The evidence in the instant case is undisputed that Marsh was an invitee upon the land. The record reflects that Oliver permitted Marsh to enter his land for the purpose of dismantling the shed. The mutual benefit was evident: Oliver obtained the disassembly, relocation and reconstruction of his shed, and Marsh received payment for these efforts. Clearly, Marsh's role was that of invitee on the premises. *See Rosas,* 518 S.W.2d at 536.

Oliver claims that Marsh's status is controverted by evidence indicating that Marsh entered the premises upon *Travel Quest's* invitation. Even if Marsh had been invited by Travel Quest as its employee, he would still be considered an invitee. A servant or employee of another person who enters the premises on the business of his master, in which business the master and the owner or occupant have a mutual interest, occupies the status of an invitee. *Atchison, Topeka and Santa Fe Ry. Co. v. Smith,* 563 S.W.2d 660, 666 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.); *see also Rosas,* 518 S.W.2d at 536.

Based upon the uncontroverted evidence that Marsh had been invited upon the property to engage in labor that was mutually beneficial to both Oliver and Marsh, we find that the trial court did not err in refusing to submit a jury question on the issue of Marsh's status as an invitee at the time of his

injury. For the foregoing reasons, we overrule Appellant's points five and six.

The judgment of the trial court is **affirmed.**