Algenard FRANCIS, Appellant,

v.

COASTAL OIL & GAS CORPORATION,
Appellee.

Coastal Gas Corporation, Appellant,

v.

Algenard Francis, Appellee.

No. 01–01–00457–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 29, 2003.

J. Michael Solar, Joel Benjamin Flowers, John Manuel Padilla, Solar & Associates, L.L.P., Houston, for appellant.

Eileen K. Wilson, McFall, Sherwood & Breitbeil, P.C., Kenneth R. Breitbeil, James J. Maher, Houston, for appellee.

Panel consists of Justices TAFT, ALCALA, and PRICE.*

## OPINION

ELSA ALCALA, Justice.

Appellant, Algenard Francis, sustained serious personal injuries in an explosion that occurred while he was working as an independent subcontractor on the premises of appellee, Coastal Gas Corporation (Coastal).[1] Having settled with another subcontractor, Acock Engineering, Francis proceeded to trial solely against Coastal. A jury awarded Francis damages, but the trial court set that verdict aside and rendered a take-nothing judgment in Coastal's favor, in accordance with chapter 95 of

---

\* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. Francis's employer, Reeled Tubing, Inc., an independent subcontractor at Coastal's premises, was a workers' compensation subscriber.

Accordingly, the Labor Code barred Francis from recovery against Reeled Tubing and also barred any third party from recovery against Reeled Tubing. *See* TEX. LAB.CODE ANN. §§ 408.001(a), 417.004 (Vernon 1996).

the Civil Practice and Remedies Code.[2] Francis presents seven issues. In support of his contention that the trial court erred by setting aside the jury's verdict, Francis argues that chapter 95 does not apply because this is an ordinary negligence case in which the record establishes that Coastal was negligent, and also because the trial court's application of chapter 95 violates the open-courts provision of the Texas Constitution.[3] Francis further contends that the trial court erred by granting Coastal leave to file a trial amendment to plead chapter 95 and by granting partial summary judgment in Coastal's favor under chapter 16, section 3.2 of the Administrative Code, a Railroad Commission regulation governing fire prevention and swabbing.[4] Francis also challenges the legal sufficiency of the evidence to support the jury's finding that Acock was negligent. Coastal brings a conditional cross-appeal to challenge the sufficiency of the evidence, the jury charge, and evidentiary rulings. We affirm.

### Facts and Procedural History

Francis was working for Reeled Tubing on a coiled-tubing washing of the M. Salinas No. 6 well on Coastal's premises when gas that had formed over an open top collecting tank exploded suddenly. The explosion resulted when the diesel motor that had been generating the power for the coiled tubing process backfired and ignited the gas over the tank. The motor had backfired once before the explosion.

Coastal held the mineral leases on the M. Salinas No. 6 well and operated the well. Coastal had rights, under these leases, to use the surface to access the miner-

als. Coastal hired others to drill and to service the wells. Coastal had a written subcontract with Acock to provide on-site consulting at the well site. Clauses four and 16 of this contract included Acock's warranties to perform its work safely, efficiently, and economically. Paragraph eight recognized Acock's status as an independent contractor with none of the benefits that Coastal normally extended to its employees. Clause eight recognized Coastal's rights to oversee and inspect Acock's services, but disclaimed association or connection with actual performance of the details of those services, and placed financial responsibility for all labor, materials, and other expenses on Acock. Acock had an extensive safety manual.

Acock, in turn, contracted with another independent contractor, Alan Bickham. Bickham worked as a consultant whose chief responsibilities were to coordinate the activities of many independent contractors at the well site and to report to Coastal about those activities. In that capacity, he was known, in oil-field vernacular, as the "company man" for Coastal.[5] His contract was with Acock, however, and he collected his wages from Acock. He had no contract with Coastal.

Coastal also subcontracted with Reeled Tubing to perform coiled-tubing work at the site. Reeled Tubing's contract with Coastal contained specific clauses, identical to those contained in the Acock subcontract, by which Reeled Tubing warranted to perform work safely, efficiently, and economically. The contract acknowledged that Reeled Tubing was an independent contractor and was not entitled to Coastal employee benefits. Reeled Tubing had its

2. Tex. Civ. Prac. & Rem.Code Ann. §§ 95.001–.004 (Vernon 1997).

3. Tex. Const. art. I, § 13.

4. 16 Tex. Admin. Code § 3.21 (Tex.R.R. Comm'n, Fire Prevention and Swabbing).

5. Bickham was sometimes referred to as "foreman."

own manual of departmental operating guidelines.

Coastal, in addition, had internal operating guidelines that applied to wells within its Corpus Christi district, in which the M. Salinas No. 6 well was located. The purpose of these guidelines was to make the field consultant aware of factors to be considered while performing different types of work. The operating guidelines that pertained to coiled-tubing operations stated that tanks "should be placed 100 feet downwind of wellhead and any source of ignition." Those guidelines applied to Reeled Tubing's work, but were apparently never conveyed to Bickham.

When gas at the M. Salinas No. 6 well was not flowing as expected, Coastal formulated an 11–point outline of a "Procedure to Run Tubing" to rehabilitate the well and increase the flow of gas by installing smaller diameter tubing inside the larger, existing casing. Reeled Tubing undertook step 10 of this plan after the first nine steps were completed by others.[6] Reeled Tubing's work involved cleaning the well by conducting a "coiled tubing wash out." In this process, an engine pumped debris out of the well and into a receptacle, in this case, an open top tank. The debris included gas, water, and sand.

Pool Well Servicing (Pool) owned the open top tank Reeled Tubing was to use at the M. Salinas No. 6 well. Before Reeled Tubing was to begin its step 10 of the "Procedure to Run Tubing," Bickham instructed Pool to move the tank from another well site, where Reeled Tubing was washing out another well, to the M. Salinas No. 6 well. Bickham proposed to meet the Pool driver at the M. Salinas No. 6 well, but was delayed at another well site. When the driver contacted Bickham by cell phone, asking where to leave the tank, Bickham gave instructions based on his recollection of where Reeled Tubing had spotted its equipment on other jobs. Bickham explained that he typically allowed the subcontractors to place their equipment safely and he sought "to fulfill the wishes of Reeled Tubing's on-site supervisor" in the instructions he gave. Bickham indicated landmarks (a heater and two coolers), but had difficulty communicating with either the dispatcher or the driver. At some point, to "get the truck gone," Bickham directed the driver to "spot" or "place" the tank on the location, adding that, if "we need to move it, we will move it." This occurred two days before Reeled Tubing arrived at the site with its equipment, which included the diesel pump.

When he arrived at the M. Salinas No. 6 well on the day of the accident, Bickham indicated to Tony Hough, Reeled Tubing's supervisor, that the tank was not located where Bickham had instructed, and that Hough should do what he needed to do to get the tank moved if that became necessary. Bickham did not discuss placement of the tank with Gail Anderson, the engineer to whom he reported.[7] As placed, the tank was approximately 30 feet away from the well head. The consensus after the accident was that the explosion resulted from proximity of the open top tank to Reeled Tubing's diesel motor.

6. Step 10 of the 11–point outline stated, "If perfs are still covered. RU 1–¼" LP CTU and test same. RIH s/ wash tip and clean to PBTD." An expert witness testifying for Francis explained that step 10 instructed Reeled Tubing as follows: "[I]f perfs are still covered, rig up one and a quarter inch low pressure coiled tubing unit and test same. Run in hole with wash tip and clean to plug back total depth." Coastal's "Procedure to Run Tubing" did not specify, beyond these terms, how Reeled Tubing was to perform this task.

7. The record suggests that Anderson was also an independent contractor.

Bickham contended that Reeled Tubing had sufficient on site equipment to move the 30 foot tank, but Reeled Tubing's district manager disagreed. The district manager further contended, however, that Hough should never have begun work without getting the tank moved and that Hough should have shut the job down instead.

Francis sued several defendants, including Coastal. Against Coastal, Francis alleged several theories including negligence, premises liability, and negligence per se. The trial court rendered partial summary judgment in Coastal's favor on the claim of negligence per se and denied Francis's motion for summary judgment on that claim.

The case was submitted to the jury under the charge proposed by Francis and included instructions on borrowed employee, over Coastal's objection. The charge inquired as to the negligence of three parties, Coastal, Francis, and the settling defendant, Acock.[8] Over Coastal's objection, negligence was submitted to the jury under the three theories of liability, as follows: chapter 95 of the Civil Practice and Remedies Code,[9] common-law negligence, and premises liability, under a business-invitee theory of liability. The jury answered "yes," in response to question three, which asked, in accordance with chapter 95, whether Coastal exercised or retained some control over the work Francis performed. However, in response to question four, the second chapter 95 liability question, the jury answered "no" as to Coastal and "yes" as to Acock and then attributed 100% of negligence to Acock in response to question six. The jury thus attributed no chapter 95 liability to Coast-

al. The jury responded to the common-law negligence and premises liability questions by finding that Coastal and Acock were both negligent and apportioned their negligence equally. In addition, the jury found that Francis's injuries arose from the discharge of hydrocarbons.

In response to the parties' post-verdict motions, the trial court (1) concluded that the jury's "no" answer in response to question four, the chapter 95 liability question, was dispositive of all Francis's claims against Coastal; (2) set aside the jury's answers to questions one and two, the common-law negligence question and related proportionate liability question, and questions six and seven, the premises-liability (invitee) question and related proportionality question; and (3) rendered a take-nothing judgment in favor of Coastal.

## Civil Practice and Remedies Code Chapter 95

Chapter 95 of the Civil Practices and Remedies Code was enacted in 1996 as part of a sweeping tort-reform package. TEX. CIV. PRAC. & REM.CODE ANN. §§ 95.001–.004 (Vernon 1997); *see Fisher v. Lee & Chang P'ship*, 16 S.W.3d 198, 201 (Tex. App.-Houston [1st Dist.] 2000, pet. denied). Chapter 95 governs "Property Owner's Liability for Acts of Independent Contractors and Amount of Recovery" and pertains to claims "for damages caused by negligence" against a "property owner." TEX. CIV. PRAC. & REM.CODE ANN. § 95.001(1)-(3) (Vernon 1997). Section 95.001(3) defines "property owner" as "a person or entity that owns real property primarily used for commercial or business purposes." TEX. CIV. PRAC. & REM.CODE ANN. § 95.001(3).

8. The record before us indicates that Francis did not sue Bickham, and no question was submitted to the jury concerning any negligence by Bickham.

9. TEX. CIV. PRAC. & REM.CODE ANN. §§ 95.001–.004.

Chapter 95 specifies that it "applies only to a claim" described as follows:

(1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; *and*

(2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

TEX. CIV. PRAC. & REM.CODE ANN. § 95.002(1)-(2) (Vernon 1997) (emphasis added).

When chapter 95 applies, a property owner will not be liable for negligence claims arising from the failure to provide a safe workplace unless:

(1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress and receive reports; *and*

(2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death or property damage and failed to adequately warn.

TEX. CIV. PRAC. & REM.CODE ANN. § 95.003(1)-(2) (Vernon 1997) (emphasis added). Both conditions of section 95.003 must be met before liability will be imposed upon the property owner. *Id.; see Kelly v. LIN Television*, 27 S.W.3d 564, 567 (Tex.App.-Eastland 2000, pet. denied). The "failure to provide a safe workplace" means that the injuries must relate to work being done by the injured party, but the injury-producing defect need not be the object of the injured party's work. *See Fisher*, 16 S.W.3d at 202 (construing legislative history and holding that injury resulting from defective ladder contractor used to access air-conditioning unit con-

tractor was hired to repair was injury within scope of section 95.002(2)).

## Applicability of Chapter 95

Whether chapter 95 applies is a preliminary issue that underlies all issues Francis presents. Issues of statutory construction raise questions of law that we properly review de novo. *Subaru of America, Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 222 (Tex.2002); *see Fisher*, 16 S.W.3d at 200–202 (analyzing applicability of chapter 95). Francis contends that Chapter 95 does not apply for the following reasons: (1) the statute does not encompass negligence by a property owner; (2) Coastal was an operator only and therefore cannot be a chapter 95 "owner"; (3) the well was not an improvement to real property; and (4) the cleaning of the well was not a construction, repair, renovation or modification of the well. We conclude, as did the trial court, that chapter 95 governs all of Francis's negligence claims against Coastal. We address each of Francis's challenges to the applicability of chapter 95 in turn.

### 1. *Whether Chapter 95 Excludes a Negligent Owner*

■ Francis's challenge raises the broad contention that a negligent owner lies beyond the scope of chapter 95. Francis points out that section 95.002(1) includes the property owner among potential defendants. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.002(1) (listing "property owner, contractor, or subcontractor"). Section 95.002(2), however, mentions only "the contractor or subcontractor" as actors who construct, repair, renovate, or modify an improvement to real property. TEX. CIV. PRAC. & REM.CODE ANN. § 95.002(2). Likewise, Francis argues, section 95.003 excludes liability in the owner solely for "personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontrac-

tor." TEX. CIV. PRAC. & REM.CODE ANN. § 95.002(3). Therefore, Francis contends, chapter 95 protects only "passive" property owners against claims of negligence. We disagree.

In isolating certain provisions of the statute to support his interpretation, Francis ignores that the negligence of a property owner, as contemplated by chapter 95 and as claimed by Francis in his pleadings, is premised on failure to provide a safe workplace due to a "condition or use of an improvement to real property" when a contractor or subcontractor "constructs, repairs, renovates, or modifies" that improvement. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.002(3); *see also Fisher*, 16 S.W.3d at 201 (examining provisions of chapter 95 "as a whole," rather than by isolated portions taken out of context).

When a contractor or subcontractor claims that a property owner was negligent, as Francis claims Coastal was here with respect to the tank, the property owner "is not liable" under chapter 95 *"unless"* the plaintiff, here Francis, satisfies both conditions of section 95.003. TEX. CIV. PRAC. & REM.CODE ANN. § 95.003(1)-(2) (emphasis added). Subsections (1) and (2) of section 95.003 thus specify the negligence by a property owner, which, if proven, will trigger liability against a property owner under chapter 95. *Id.* Under chapter 95, a negligent and, therefore, liable property owner is one shown (1) to have exercised or retained "some control over the manner in which work is performed" and (2) to have had "actual knowledge of the danger or condition resulting in the personal injury, death, or property damage," yet "failed to adequately warn" of that danger. *Id.* Imposing proof of these active and subjective conditions as prerequisites to liability for negligence, section 95.003, and thus chapter 95, negates passivity in the premises owner. A property owner who is liable under chapter 95,

therefore, cannot be the "passive" owner whom Francis contends the statute protects exclusively.

## 2. *Whether Coastal Was a "Property Owner"*

■ Francis contends that Coastal cannot escape liability under chapter 95 because Coastal was merely the "operator" of the real property premises, here the M. Salinas No. 6 well. Francis further contends that the statute protects only "owners." The final judgment recites the trial court's determination that Coastal was both the mineral interest owner and the well operator. The trial court determined that the statutory provisions do not exclude an owner who is also an operator. We agree.

■ Coastal was a "property owner" under chapter 95 of the M. Salinas No. 6 gas well because it held the mineral leases pertaining to those premises and obtained mineral interests pursuant to those leases. Well-settled law holds that a mineral lease conveys a fee simple determinable interest in real property. *E.g., Jupiter Oil Co. v. Snow*, 819 S.W.2d 466, 468 (Tex.1991). We therefore hold that Coastal was an owner of real property, as contemplated by section 95.001(3), by virtue of its status as lessee. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 95.001(3). As owner of the leased property, Coastal used the property in its commercial or business purposes of producing and marketing oil and gas, as further contemplated by section 95.001(3). *See id.* Nothing in the plain language of the statute supports Francis's interpretation that an owner of a premises who also operates the premises is removed from the protections of chapter 95.

## 3. *Whether the Well Was an Improvement to Real Property*

■ Francis claims that the M. Salinas well is not an improvement to real proper-

ty as a matter of law. Francis relies solely on *Holley v. NL Indus./NL Acme Tool Co.*, 718 S.W.2d 813 (Tex.App.-Austin 1986, writ ref'd n.r.e.). *Holley* arose from a judgment awarding damages for misapplication of construction-contract trust funds. *Id.* at 813–14. *Holley* holds that, "*drilling* an oil and gas well is not the construction of an improvement on real property" for purposes of chapter 162 of the Property Code. *Id.* at 814–15 (emphasis added). Because Chapter 162 governs construction payments held in trust under a construction contract, the court of appeals rendered a take-nothing judgment against the party claiming that Holley misapplied the funds. *Id.* at 814–15; *see* TEX. PROP.CODE ANN. § 162.001(a) (Vernon Supp.2003). *Holley* focuses solely on whether "construction," specifically the activity of drilling, constitutes an improvement under the construction-payments provisions of the Property Code. In deciding that "construction" does not constitute an improvement, however, *Holley* reasons that drilling does not "involve the assembly of various materials into a permanent structure," in contrast to the well that remains after the drilling. *Holley*, 718 S.W.2d at 815. *Holley* thus conforms with settled law recognizing that mineral wells constitute improvements to real property. *E.g., Fox v. Thoreson*, 398 S.W.2d 88, 89 (Tex.1966) (referring to gas well constructed on real property premises as "improvements"); *Hunt v. HNG Oil Co.*, 791 S.W.2d 191, 194 (Tex.App.-Corpus Christi 1990, writ denied) (referring to four producing wells and well in process of completion as "improvements").

### 4. *Whether Cleaning the Well Was Construction, Repair, Renovation, or Modification*

■ Francis further contends that, if a well is an improvement to real property,

the cleaning of the well was not a construction, repair, renovation or modification of improvement. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.002(2). Francis cites no authority holding or suggesting that the coiled-tubing washout that Francis was performing for Reeled Tubing at the M. Salinas No. 6 well does not qualify as repair, renovation, or modification under section 95.002(2). The record reflects that the purpose of the coiled-tubing washout was to rehabilitate the well so that the flow of gas could increase. Accordingly, we hold that the coiled-tubing washout Francis was performing qualified as either repair or renovation of the well. *See id.*

### Coastal's Liability under Chapter 95

■ Francis's first, third, and fourth issues challenge the trial court's setting aside the jury's verdict and rendering a take-nothing judgment in favor of Coastal. In determining whether there is no evidence of probative force to support a jury's finding, we must consider all the record evidence in the light most favorable to the party in whose favor the verdict has been rendered and indulge every reasonable inference from the evidence in that party's favor. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). We will sustain a no-evidence point when (1) there is a complete absence of evidence of a vital fact, (2) the rules of law or evidence preclude giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.* (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L.REV. 361, 362–63 (1960)).

The record reflects that Francis drafted and tendered the charge submitted to the

jury, subject only to the following objections by Francis, which the trial court overruled: an objection regarding sole proximate cause, an objection that chapter 95 did not apply, and objections to the lack of evidence of negligence by Francis or the settling defendant Acock.[10]

Question one of the charge and the jury's responses to question one are as follows:

### Question No. 1

Did the negligence, if any, of those named below proximately cause the injury in question?

Answer "Yes" or "No" for each of the following:

| | | |
|---|---|---|
| a. | Coastal Oil & Gas Corporation | Yes |
| b. | Algenard Francis | No |
| c. | Acock Engineering & Associates, Inc. | Yes |

Over Coastal's objection, Question one defined "negligence" for all parties solely in terms of the common-law duty of "ordinary care." COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES, *General Negligence* PJC 2.1 (2002 ed.). In response to Question two, the jury found Coastal 50% negligent and Acock 50% negligent.

Question three of the charge inquired solely as to Coastal and incorporated the first element of section 95.003. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 95.003(1). Question three and the jury's responses to question three are as follows:

### Question No. 3

Do you find that, on the occasion in question, Coastal Oil & Gas Corporation exercised or retained some control over the manner in which the work was performed, other than the right to order the

work to start or stop or to inspect progress or receive reports?

Answer "Yes" or "No."

Answer: Yes

By responding "yes," the jury found that Francis met the first element required to impose negligence liability on Coastal. *See id.*

Question four and the jury's responses to question four are as follows:

### Question No. 4

Did. the negligence, if any, of those named below proximately cause the injury in question?

Answer "Yes" or "No" for each of the following:

| | | |
|---|---|---|
| a. | Coastal Oil & Gas Corporation | *No* |
| b. | Algenard Francis | No |
| c. | Acock Engineering & Associates, Inc. | Yes |

(Emphasis added.)

Question four of the charge thus began by repeating question 1 verbatim, and continued to track question one by defining "negligence" solely in terms of "ordinary care," but only as to Francis and Acock. Concerning Coastal, question four defined "negligence" essentially in conformity with subsection (2) of section 95.003, and thus the second element required as a prerequisite to imposing liability on Coastal, as follows:

For purposes of this question only, "Negligence," when used with respect to Coastal Oil & Gas Corporation, means failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by the condition or use of an improvement to real property; provided however that Coastal must have had actual knowledge of such risk and failed to adequately warn of it.[11]

---

**10.** Coastal raised numerous objections to the charge, which the trial court overruled, and tendered several questions and instructions, which the trial court also overruled.

**11.** *See* TEX. CIV. PRAC. & REM.CODE ANN. § 95.003(2). Coastal objected that this instruction was (1) an incomplete statement of

An additional instruction followed, which defined "ordinary care," as follows:

> For purposes of this question only, "Ordinary care[,]" when used with respect to the conduct of Coastal Oil & Gas Corporation as an owner/operator of a premises, means the degree of care that would be used by an owner/operator of ordinary prudence under the same or similar circumstances.

In contrast to the response to question one, in which the jury answered "yes" as to both Coastal and the settling defendant Acock, and thus found both negligent under the "ordinary negligence" standard, the jury answered question four by finding that Coastal was not negligent under the second element of section 95.003. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 95.003(2). In response to question five, the jury apportioned total negligence liability to the settling defendant Acock.

Over Coastal's objection, question six submitted yet another question to the jury concerning the negligence of Coastal, Francis, and the settling defendant Acock. Question six of the charge and the jury's responses to question six are as follows:

### Question No. 6

Did the negligence, if any, of those named below proximately cause the injury in question?

Answer "Yes" or "No" for each of the following:

| | | |
|---|---|---|
| a. | Coastal Oil & Gas Corporation | Yes |
| b. | Algenard Francis | No |
| c. | Acock Engineering & Associates, Inc. | Yes |

Like Question four, question six began by repeating question one verbatim and continued to track question one by defining "negligence" solely in terms of "ordi-

nary care" as to Francis and Acock. Concerning Coastal, and over several objections by Coastal, question six defined "negligence" differently again, this time in terms of "business invitee" liability, as follows:

> With respect to the condition on the premises, Coastal Oil & Gas Corporation was negligent if—
>
> a. The condition posed an unreasonable risk of harm, and
>
> b. Coastal Oil & Gas Corporation knew or reasonably should have known of the danger, and
>
> c. Coastal Oil & Gas Corporation failed to exercise ordinary care to protect Algenard Francis from the danger, by failing to adequately warn Algenard Francis of the condition and failing to make the condition reasonably safe.[12]

The definition of "ordinary care" in question six differed slightly from the definition in question four, but was essentially the same. In response to question seven, as in response to question two, the jury determined that Coastal was 50% negligent and that the settling defendant Acock was also 50% negligent.

The trial court's judgment reflects its determination, post-verdict and in response to Coastal's motion to render a take-nothing judgment based on the jury's response to question four, that the jury's "no" response to that question was dispositive of all Francis's claims against Coastal. Question four inquired as to subsection (2), the second element of section 95.003, of which Francis had to meet both elements in order to trigger liability in Coastal. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 95.003(1)-(2). In accordance with this

---

the governing law and (2) not limited to the activity that produced the injury.

**12.** *See* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., *Premises* TEXAS PATTERN JURY CHARGES PJC 66.3 (2000 ed.).

ruling, the trial court (1) set aside the jury's answers to questions one and two, which contemplated Coastal's negligence solely in terms of "ordinary care," and questions six and seven, which contemplated Coastal's negligence under a "business invitee" theory of liability, and (2) rendered a take-nothing judgment in Coastal's favor. The take-nothing judgment includes a footnote, which reads, in part, as follows:

> To be clear, this court finds that there is some evidence in the trial record supporting the Jury's findings in response to question nos[.] 1, 2, 6 and 7, as there is some evidence of Coastal's negligence proximately causing Plaintiff's damages. However, the Court concludes that Chapter 95 ... preempts Francis'[s] common[-]law claims against Coastal.... Accordingly, this Court likely erred in submitting any liability question other than one comporting with the statute. The jury answered no to the sole question pertaining to the statute. This Court therefore has a duty and obligation to disregard all other answers made by the jury.

### Exclusive Remedy

In his first issue, Francis contends that the trial court erred by disregarding the jury's verdict and by rendering a take-nothing judgment in favor of Coastal. Francis contends that disregarding the verdict conflicts with the court's footnote recited above, that "there is some evidence" that Coastal was negligent and proximately caused Francis's injuries. Francis's arguments propose that he may still recover against Coastal under the common law, beyond chapter 95, and thus challenge the trial court's conclusion that chapter 95 preempts all common-law negligence claims against Coastal under the circumstances of this case and is, there-

fore, Francis's exclusive remedy against Coastal.

We agree with the trial court that chapter 95 controls this case, is Francis's exclusive remedy against Coastal, and precludes common-law negligence liability in Coastal. See Fisher, 16 S.W.3d at 201 (holding that chapter 95 controlled liability for injuries arising from failure to provide a safe workplace); see also Dyall v. Simpson Pasadena Paper Co., No. 14–01–00432–CV, slip op. at 11, —— S.W.3d ——, ——, 2003 WL 21664163 (Tex.App.-Houston [14th Dist.] July 17, 2003, motions for rehearing and for rehearing en banc pending; not yet reported) (holding that chapter 95 precludes common-law negligence claims); Kelly, 27 S.W.3d at 570–71 (affirming summary judgment for property owner shown not to have control over details of work performed by injured party).

Francis's contention that chapter 95 does not preclude recovery ignores the plain language of the statute. See Fisher, 16 S.W.3d at 201. As addressed above, Coastal is a "property owner," as defined by section 95.001(3). See Tex. Civ. Prac. & Rem.Code Ann. § 95.001(3). Francis sued Coastal for "damages caused by negligence," as contemplated by chapter 95, claiming personal injuries arising from an improvement to real property, specifically, the well Francis was working on while performing the coiled-tubing washout. See Tex. Civ. Prac. & Rem.Code Ann. §§ 95.001(1), 95.002(1), (2); see also Kelly, 27 S.W.3d at 569–70 (applying chapter 95 to assertions of negligence, negligence per se, res ipsa loquitur, and negligent misrepresentation). Under the clear language of the statute, Francis had to meet the evidentiary burdens imposed by section 95.003(1) and (2) to prevail against Coastal on his negligence claims. See Tex. Civ. Prac. & Rem.Code Ann. § 95.003(1)-(2). We hold that Francis's exclusive remedy

against Coastal for its alleged negligence in causing Francis's injuries was pursuant to chapter 95.

### Specific JNOV Challenges

■ In his first issue challenging the trial court's rendering judgment notwithstanding the verdict, Francis emphasizes the role of Bickham at the worksite, as well as Coastal's 100–foot guideline for the proximity of tanks to any ignition source.

Concerning Bickham, Francis relies on evidence that Bickham was referred to at the worksite as Coastal's "company man." Therefore, Francis contends, Bickham was Coastal's employee or agent, and Coastal should be held responsible for Bickham's conduct. Francis claims that because Bickham was Coastal's "company man" and directed the placement of the tank, Bickham had actual knowledge of the danger, and Coastal therefore had actual knowledge of the danger, yet failed to warn.

Francis's contention conflicts, at the outset, with the jury's finding, in response to question four, that Coastal was not negligent under the second element required by section 95.003 to impose liability. *See* Tex. Civ. Prac. & Rem.Code Ann. § 95.003(2). Francis ignores this finding and does not challenge it. Question four defined "negligence" closely in compliance with section 95.003(2) as failing to "use ordinary care to reduce or eliminate an unreasonable risk of harm created by the condition or use of an improvement to real property," provided, however, that "Coastal must have had actual knowledge of such risk and failed to adequately warn of it." *See id.*

Moreover, instructions included in the jury charge at Francis's request and

adopted by the trial court over lengthy objections by Coastal, fail to compel the conclusion that Bickham's knowledge should be attributed to Coastal. These instructions, which preceded the questions in the charge, read as follows:

> Unless otherwise specifically instructed in a given question, you are instructed that a corporation acts through certain of its employees and agents and in that regard is responsible for the actions of any person who:

> On the occasion in question was in furtherance of a mission for the benefit of the corporation and subject to the control of the corporation as to the details of the mission; or

> On the occasion in question, was in the service of the corporation with the understanding, express or implied, that the corporation had the right to direct the details of the work and not merely the *result* to be accomplished, and was acting in furtherance of the business of the corporation.[13]

These instructions are not expressly tied to Bickham or any individual, however, and could apply equally to the settling defendant Acock or others. The jury charge, as proposed by Francis, did not include a question asking the jury to determine whether Bickham was Coastal's employee. *See* Comm. on Pattern Jury Charges, State Bar of Tex., *Agency and Special Relationships,* Texas Pattern Jury Charges PJC (7.1) (2002 ed.) (question concerning status as employee); *see also* Tex.R. Civ. P. 279 (waiver of grounds or defenses not submitted to jury). The charge Francis submitted did not sufficiently present Bickham's claimed status

---

**13.** These instructions approximated PJC instructions concerning the status of a person functioning as a borrowed employee. *See* Comm. on Pattern Jury Charges, State Bar of Tex., *Agency and Special Relationships,* Texas Pattern Jury Charges PJC (7.3, 7.4) (2002 ed.) (instructions for "borrowed employee").

as an employee or agent and completely disregarded the status that the record indicates Bickham held, that of an independent contractor. *See Oliver v. Marsh,* 899 S.W.2d 353, 357 (Tex.App.-Tyler 1995, no writ) (recognizing that status as independent contractor presents inferential rebuttal issue that is properly submitted to jury by instruction rather than question); *see also* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., *Agency and Special Relationships,* TEXAS PATTERN JURY CHARGES PJC (7.8) (2002 ed.) (independent contractor instruction).

Moreover, the term "company man" does not refer definitively to either an employee or an independent contractor. *See Yeager v. Drillers, Inc.,* 930 S.W.2d 112, 116 (Tex.App.-Houston [1st Dist.] 1996, no writ) (using term "company man" to describe supervisor employed by leaseholder of well site); *see also Melvin Green, Inc. v. Questor Drilling Corp.,* 946 S.W.2d 907, 908 (Tex.App.-Amarillo 1997, no pet.) (applying term "company man" to independent contractor hired to direct drilling operations; citing *Yeager* as noting term commonly used in oil and gas industry).

■ The evidence establishes that Bickham was an independent contractor hired by the settling defendant Acock. Acock, in turn, was an independent contractor hired by Coastal. Bickham had no contract with Coastal. His contract was with Acock and he was paid by Acock. Although Coastal had delegated "stop and start" authority to Bickham, that authority is not sufficient control to trigger liability in Coastal under the plain language of the controlling statute. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 95.003(1). The analysis is the same for the reports that Bickham issued to Coastal four times daily. *See id.* Moreover, as this case demonstrates, con-

trol alone is not sufficient to establish liability under chapter 95, which requires additional proof to meet the second element of section 95.003. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 95.003(2).

As under pre-chapter 95 case law, Coastal's unwritten "100–foot–rule" guideline for placing tanks no closer than 100 feet of an ignition source, which was apparently not communicated to Bickham, would merely set a minimum safety standard that is also insufficient to trigger liability. *See Coastal Marine Serv. v. Lawrence,* 988 S.W.2d 223, 226 (Tex.1999).

■ Francis did not establish that Bickham was acting as Coastal concerning placement of the tank. Accordingly, Francis did not establish that Coastal—and not Bickham—had actual knowledge of the proximity of the tank to Reeled Tubing's diesel motor and failed to warn Francis of the danger that proximity presented. A trial court properly renders judgment notwithstanding the verdict when the law, in this case chapter 95, precludes according any weight to the only evidence offered to prove a vital fact, here, that Coastal was negligent. *See Havner,* 953 S.W.2d at 711; *Min v. Avila,* 991 S.W.2d 495, 507 (Tex. App.-Houston [1st Dist.] 1999, no pet.) (citing *Havner,* 953 S.W.2d at 711).

We overrule Francis's first issue.

■ Francis's third and fourth issues challenge the trial court's disregarding the jury's answers to questions one and six.[14] As addressed above, question one defined Coastal's negligence in terms of the failure to use ordinary care and thus, ordinary negligence. Likewise, question six defined Coastal's negligence in terms of the duty owed a business invitee concerning a premises defect. Both fall short of the

---

**14.** Francis's third issue includes a challenge to the trial court's setting aside the jury's

answer to question two, the proportionality question that followed question one.

negligence standard imposed by chapter 95 and were therefore incorrect. Accordingly, the trial court properly concluded that submitting those questions was error and properly set the jury's responses to those questions aside as in conflict with chapter 95, which precluded according any weight to evidence offered to prove Coastal's negligence under simple negligence or premises-defect theories of liability. *See Havner*, 953 S.W.2d at 711; *Min*, 991 S.W.2d at 507.

We overrule issues three and four.

■ Francis's sixth issue is styled as a challenge to the legal sufficiency of the evidence to support the jury's finding that Acock was negligent and attributing fault to Acock in response to questions one through two and four through seven. Analysis of this issue, however, shows that it is contingent on this Court's having sustained Francis's first, third, and fourth issues by reinstating the jury's findings premised on ordinary negligence and premises-defect liability. Having overruled issues one, three and four, and having held that chapter 95 is Francis's exclusive remedy against Coastal, we overrule issue six as moot.

## Trial Amendment to Assert Chapter 95

■ In his second issue, Francis contends that the trial court erred in granting Coastal leave to file a trial amendment, after the close of evidence, to plead chapter 95. Francis argues that chapter 95 is an affirmative defense and that the trial amendment allowing its assertion was prejudicial on its face.[15] In granting Coastal leave, the trial court noted that the issue had been tried by consent.

■ A trial court has no discretion to refuse a trial amendment unless (1) the opposing party presents evidence of surprise or prejudice or (2) the amendment is objected to and asserts a new cause of action or defense and is thus prejudicial on its face. TEX.R. CIV. P. 66; *Chapin & Chapin, Inc. v. Tex. Sand & Gravel Co.*, 844 S.W.2d 664, 665 (Tex.1992); *Stephenson v. LeBoeuf*, 16 S.W.3d 829, 839 (Tex. App.-Houston [14th Dist.] 2000, pet. denied). An amendment is mandatory if it is merely procedural in nature, as when conforming the pleadings to evidence presented at trial. *Stephenson*, 16 S.W.3d at 839. An amendment is not necessary if it is substantive, i.e., changes the nature of the trial. *Id.* If the amendment is not necessary, the decision to allow or deny the amendment is within the sound discretion of the trial court. *See State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex.1994); *Stephenson*, 16 S.W.3d at 839. Thus, the trial court's decision to allow or deny the amendment may be reversed only if the trial court clearly abuses its discretion. *Stephenson*, 16 S.W.3d at 839.

■ A proposed trial amendment that asserts a new cause of action may be prejudicial on its face. *Id.* Amending pleadings to assert a new cause of action, however, is not prejudicial to the opposing party as a matter of law, but must be evaluated in the context of the entire case. *Id.* For an amendment to be prejudicial on its face, it must (1) assert a new substantive matter that reshapes the nature of the trial itself, (2) be of such a nature that the opposing party could not have anticipated it in light of the development of the case, and (3) detrimentally affect the opposing party's presentation of the case. *Id.*

15. The parties dispute whether chapter 95 is appropriately considered an affirmative defense. Because we conclude that Coastal's trial amendment asserting Chapter 95 was not prejudicial on its face, we need not address this issue.

Although Coastal's trial amendment to assert chapter 95 may have been substantive, it was not prejudicial on its face. The record reflects that both parties proceeded to trial with the understanding that chapter 95 was an issue to be tried. Francis's pleadings allege all essential elements necessary to sustain a claim under chapter 95, including ownership, control, improvement, and actual knowledge. Furthermore, Francis was aware of Coastal's reliance on chapter 95 at the conclusion of Francis's case-in-chief, when Coastal moved for a directed verdict premised on chapter 95 grounds. Francis did not challenge assertion of chapter 95 in opposing Coastal's motion for directed verdict.

Moreover, although Francis objected to including chapter 95 elements in the charge on the grounds that the statute did not apply, Francis did not object that Coastal's asserting chapter 95 was prejudicial. From our review of the record, we conclude that the trial court properly concluded that the chapter 95 issues had been tried by consent. Francis has not shown that Coastal's asserting chapter 95 either reshaped the nature of trial or surprised Francis detrimentally and affected his case adversely. Accordingly, we hold that the trial court did not abuse its discretion in allowing Coastal's trial amendment.

We overrule issue two.

### Chapter 95 and "Open Courts" Provision

In his fifth issue, Francis contends that chapter 95, as applied in this case, violates the Texas "open courts" provision of the Texas Constitution because it forecloses his right to seek redress for injuries caused by Coastal's negligence. The "open courts" provision provides that, "all courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. The provision bars restricting a well-established common-law cause of action in a manner that is unreasonable or arbitrary in view of the statute's purpose. *Earle v. Ratliff*, 998 S.W.2d 882, 889 (Tex. 1999).

Francis argues that permitting chapter 95 to preclude recovery against Coastal unconstitutionally "forecloses," "redefines," or "abolishes" his common-law claim for negligence. We disagree. Chapter 95 does not "abolish" negligence claims against property owners. Rather, the statute delineates the evidentiary showing a plaintiff must meet to prevail on a claim of negligence against a property owner. Under chapter 95, a property owner is not liable for the acts of independent contractors unless the owner exercises control over the contractor's work and has knowledge of the danger or condition resulting in injury. TEX. CIV. PRAC. & REM.CODE ANN. § 95.003. The only claims that chapter 95 arguably "abolishes" are those that seek to hold property owners strictly liable for the negligence of their contractors. *See Fisher*, 16 S.W.3d at 201. We fail to see how "abolishing" strict liability unreasonably or arbitrarily restricts claims for negligence. Provided the plaintiff meets the evidentiary burdens imposed by chapter 95, the statute unequivocally permits negligence recovery. *Id.* Accordingly, we hold that applying chapter 95 in this case does not violate the "open courts" provision of the Texas Constitution.

We overrule issue five.

### Negligence Per Se under Railroad Commission Regulation

In his seventh issue, Francis contends that the trial court erred by granting partial summary judgment in Coastal's favor under chapter 16, section 3.21 of the Administrative Code, a Railroad Commission

regulation that governs fire prevention and swabbing. *See* 16 TEX. ADMIN. CODE § 3.21 (Tex.R.R. Comm'n, Fire Prevention and Swabbing) (prohibiting, among other things, hydrogen-flow tanks from being placed within 150 feet of power plants). Francis and Coastal filed traditional cross-motions for summary judgment on this claim, and Coastal also sought a no-evidence summary judgment. TEX.R. CIV. P. 166a(c), (i). The trial court denied Francis's motion and granted Coastal's. In reviewing the trial court's ruling, we apply the usual standards of review. *Id.*; *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995) (traditional motion for summary judgment); *Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex.2000) (no-evidence motion for summary judgment).

 Coastal moved for summary judgment on Francis's claims under the Railroad Commission regulation by claiming that the regulation did not, as a matter of law, give rise to a duty in Coastal to Francis. In challenging Coastal's right to prevail by summary judgment, Francis asserts that Coastal violated the Commission's regulation and was, therefore, negligent per se. Negligence per se is a common-law doctrine that imposes a duty based on a penal statute, as opposed to the reasonably-prudent-person standard that applies to pure negligence claims. *Reeder v. Daniel*, 61 S.W.3d 359, 361–62 (Tex.2001); *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex.1997). Because Railroad Commission regulations are not penal statutes, they do not provide a basis for claims of negligence per se. *See Entex v. Gonzalez*, 94 S.W.3d 1, 8–9 (Tex.App.-Houston [14th Dist.] pet. denied) (holding negligence per se not applicable to violation of Railroad Commission regulation); *Hicks v. Humble Oil & Ref. Co.*, 970 S.W.2d 90, 95 (Tex.App.-Houston [14th Dist.] 1998, pet. denied) (same).

Moreover, allegations of negligence per se are "claims for damages caused by negligence" for the purposes of chapter 95. *See Kelly v. LIN Television of Texas*, 27 S.W.3d 564, 569 (Tex.App.-Eastland 2000, pet. denied). To prevail on his theory of negligence per se, therefore, Francis had to meet all evidentiary prerequisites of chapter 95, including the requirement that Coastal had actual knowledge. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 95.003(2). As addressed above, Francis did not meet that requirement.

Because negligence per se does not apply under the circumstances of this case, we hold that the trial court did not err by granting partial summary judgment in favor of Coastal on that claim.

We overrule issue seven.

### Coastal's Conditional Cross–Appeal

Coastal preserved its right to present several issues by filing its own notice of appeal, but these issues are conditioned on our sustaining Francis's issues. Having overruled Francis's issues, we need not address Coastal's issues. *See* TEX.R.APP. P. 47.1.

### Conclusion

We affirm the judgment of the trial court. We overrule all pending motions.