Affirmed and Opinion filed January 31, 2008








Affirmed and Opinion filed January 31, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00783-CV

____________

 

GARY VANDERBEEK, Appellant

 

V.

 

SAN JACINTO METHODIST HOSPITAL, Appellee

 



 

On Appeal from the 125th
District Court

Harris County, Texas

Trial Court Cause No. 03-19917

 



 

O P I N I O N

The employee of a plumbing contractor brought suit against
a hospital to recover damages for injuries he sustained while working on the
hospital premises.  In challenging the summary judgment granted in favor of the
hospital, the plumber contends that (1) the trial court erred in applying
Chapter 95 of the Texas Civil Practice and Remedies Code and (2) even if
Chapter 95 applies, the summary-judgment evidence raises a fact issue, and,
therefore, summary judgment was improper.  We affirm.  








I.  Factual and Procedural
Background

Appellant Gary Vanderbeek, a plumber employed by Humphrey
Plumbing, sustained injuries to both legs when a caustic substance spilled on
him while he was working in a building owned by appellee San Jacinto Methodist
Hospital (the AHospital@).  The Hospital
had contracted with Humphrey Plumbing for plumbing work necessary to remodel
the Hospital=s emergency room.  As part of the remodel, Vanderbeek
worked on a plumbing pipe within a wall.  For this project, Vanderbeek cut and
capped a vent line and a drainage pipe, both of which were connected to a sink
in an adjacent room used for emergency care.  Vanderbeek informed the
emergency-room manager that the sink was out of order and should not be used. 
Hospital employees placed a piece of sheetrock over the sink and wrote Aout of order@ on the sheetrock.

After Vanderbeek performed this work, within several weeks= span, a plumber
employed by the Hospital attempted to unclog the sink on two occasions.  In the
same time period, two other Hospital maintenance employees were called to
address drainage issues with the same sink.  These Hospital employees may have
poured AGlug@ drain cleaner
into the sink.  Eventually, the sink was removed as the remodeling progressed
in that room.

Several weeks after his initial work, Vanderbeek returned
to reconnect the pipe.  No one warned Vanderbeek that a substance might be
present in the pipe.  Hospital personnel were not present at the time, and he
worked without direction or instructions from Hospital personnel.  When
Vanderbeek removed the cap to the drainage pipe, a liquid came out of the pipe
and covered Vanderbeek=s pants from the knees down.  Vanderbeek
alleged he suffered chemical burns requiring medical treatment, lost time from
work, and endured extreme physical pain and emotional distress.  Vanderbeek
alleged that the Hospital was negligent because it allowed caustic drain
cleaner into the sink, when the sink was not to be used.  








The Hospital moved for summary judgment on the ground that
Chapter 95 of the Texas Civil Practices and Remedies Code bars Vanderbeek=s claim. 
Vanderbeek responded that a fact issue remained as to whether the Hospital
assumed the duty of taking the sink out of service based on the following
evidence: 

!                  
At least one
Hospital plumber and two Hospital maintenance employees were called to address
drainage problems with the sink between the time Vanderbeek created the
temporary door (November 2, 2002) and the date on which the liquid came out of
the pipe (December 27, 2002); 

!                  
The sink was
removed prior to December 27, 2002;

!                  
A caustic
substance remained in the pipe, and test results from Vanderbeek=s pants revealed that the caustic
substance was consistent with the composition of the drain cleaner AGlug,@ a product commonly used by the Hospital. 

The
trial court granted the Hospital=s motion. 
Vanderbeek now appeals the trial court=s decision and
contends that (1) the Hospital failed to conclusively prove that Chapter 95 of
the Texas Civil Practices and Remedies Code applies to his negligence claim and
(2) even if Chapter 95 applies, the trial court erred in granting the motion
for summary judgment because Vanderbeek raised a genuine issue of fact as to
whether the Hospital exercised or retained sufficient control over the manner
in which the work was performed.

II.  Issues Presented

          Vanderbeek
presents the following issues for review: 

(1)       Does Chapter 95 apply to claims grounded not in vicarious
liability but solely in a premises owner=s
own negligence?

(2)       Did the Hospital conclusively prove that Chapter 95 applies
to Vanderbeek=s negligence claims?

(3)       Did the trial court improperly shift the summary-judgment
burden of proof to Vanderbeek to create a fact issue in the application of
Chapter 95 to his claims?








(4)       Alternatively, under Chapter 95, may a premises owner like
the Hospital undertake its own independent work or tamper with subcontractors= work on projects on its property yet escape liability
for injuries sustained by those subcontractors or their employees resulting
from such acts?

(5)       In the alternative, does a
fact issue exist concerning whether Chapter 95 bars Vanderbeek=s claims?

III.   Standard of Review

We review issues of statutory construction de novo.  Subaru
of Am., Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 222 (Tex.
2002).  When a statute
is clear and unambiguous, we need not resort to extrinsic aids to define the
meaning of the statute.  St. Luke=s Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 (Tex. 1997). 
When, as in this case,  the meaning of the statutory language is unambiguous,
we adopt the interpretation supported by the plain meaning of the provision=s words.  Id.; Monsanto Co.
v. Cornerstones Mun. Util. Dist., 865 S.W.2d 937, 939 (Tex. 1993); Dyall
v. Pasadena Paper Co., 152 S.W.3d 688, 708 (Tex. App.CHouston [14th Dist.] 2004, pet.
denied) (en banc) (determining the legislative intent behind Chapter 95 of the
Texas Civil Practice and Remedies Code by examining the plain meaning of the
words of the statute.) 








In a traditional motion for summary judgment, if the movant=s motion and summary-judgment
evidence facially establish its right to judgment as a matter of law, the
burden shifts to the nonmovant to raise a genuine, material fact issue
sufficient to defeat summary judgment.  M.D. Anderson Hosp. & Tumor
Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000).  In our de novo
review of a trial court=s summary judgment, we consider all the
evidence in the light most favorable to the nonmovant, crediting evidence
favorable to the nonmovant if reasonable jurors could and disregarding contrary
evidence unless reasonable jurors could not.  Mack Trucks, Inc. v. Tamez,
206 S.W.3d 572, 582 (Tex. 2006).  The evidence raises a genuine issue of fact
if reasonable and fair-minded jurors could differ in their conclusions in light
of all of the summary-judgment evidence.  Goodyear Tire & Rubber Co. v.
Mayes, 236 S.W.3d 754, 755B56 (Tex. 2007).  When, as in this case,
the order granting summary judgment does not specify the grounds upon which the
trial court relied, we must affirm the summary judgment if any of the
independent summary-judgment grounds is meritorious.  FM Props. Operating
Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).

                                                   IV. 
Analysis

A.      Did the
trial court err in determining that the summary-judgment evidence conclusively
proves that Chapter 95 applies to Vanderbeek=s claim?

Vanderbeek argues in his main issue that the trial court
erred in determining that the  summary-judgment evidence conclusively proves
that Chapter 95 bars his negligence claim against the Hospital.  Vanderbeek
asserts that Chapter 95 does not apply because his negligence claim is
predicated solely upon the negligence of the Hospital, as the premises owner,
rather than on the negligence of other independent contractors.

          Chapter 95 of the
Texas Civil Practice and Remedies Code governs a property owner=s liability for
acts of independent contractors.  Tex.
Civ. Prac. & Rem. Code Ann. ' 95.001 (Vernon 2005).  Under section
95.001, a Aclaim@ involves Aa claim for damages caused by negligence.@  Id. ' 95.001(1).  A Aproperty owner@ is a Aperson or entity that owns real
property primarily used for commercial or business purposes.@  Id. ' 95.001(3).  Section 95.002
specifically applies Chapter 95 to a negligence claim

(1)  against a property owner, contractor, or subcontractor for
personal injury, death, or property damage to an owner, a contractor, or a
subcontractor or an employee of a contractor or subcontractor; and

(2)  that arises from the condition or use of an improvement to real
property where contractor or subcontractor constructs, repairs, renovates, or
modifies the improvement.  








Id. ' 95.002 (Vernon
2005).  Under Chapter 95, the Hospital is a property owner.  See id. ' 95.001(3).  In asserting
his claim, Vanderbeek attempts to hold the Hospital liable for personal injury. 
See id. '' 95.001(1), 95.002(1).  Vanderbeek is
an employee of Humphrey Plumbing, a contractor for the Hospital.  See id. ' 95.002(1).  Vanderbeek=s negligence claim
arises from the condition or use of the Hospital building, which is an
improvement to real property.  See id. ' 95.002(2).  The contractor
(Humphrey Plumbing) repaired, renovated, or modified the Hospital building.  See
id. ' 95.002(2).  The
summary-judgment evidence conclusively proves that Vanderbeek=s claim meets all
of the section 95.002 requirements.

Additionally, under the plain language of section 95.003,
property owners are not liable for negligence claims covered by Chapter 95
unless two conditions are met: (1) the property owner exercises or retains some
control over the manner in which the work is performed, other than the right to
order the work to start or stop or to inspect progress or receive reports;
and (2) the property owner had actual knowledge of the danger or
condition resulting in the personal injury, death, or property damage and
failed to adequately warn.  Id. ' 95.003 (Vernon
2005).  If section 95.002 made Chapter 95 inapplicable to negligent property
owners, then section 95.003 would be unnecessary.  See Francis v. Coastal Oil & Gas
Corp., 130 S.W.3d
76, 84 (Tex. App.CHouston [1st Dist.] 2003, no pet.) (concluding that section
95.003 imposes proof of control and knowledge as prerequisites to liability for
negligence and that Chapter 95 does not protect only Apassive@ owners).

Vanderbeek
makes three arguments urging the inapplicability of Chapter 95.  First,
Vanderbeek argues that Chapter 95 does not apply because the negligence in this
case resulted from the Hospital=s actions, as premises owner, in allowing a caustic substance
into the drain.  Vanderbeek asserts that Chapter 95 is intended to protect only
passive property owners.  According to Vanderbeek, the omission of Aproperty owner@ from section 95.002(2) means that a
negligent property owner is excluded from the category of property owners
protected by Chapter 95. 








Under
its unambiguous language, Chapter 95 governs negligence claims against a
property owner for personal injury, death, or property damage to
contractors, subcontractors, or an employee of either if the claim arises from
the condition or use of an improvement to real property and if the contractor or
subcontractor constructs, repairs, renovates, or modifies the improvements.  Id. ' 95.002.  Section 95.002
does not limit the scope of Chapter 95 based on the acts, omissions, or nature
of the alleged negligence of the property owner.  Id. 

Appellant is correct in noting that section 95.002(1)
includes Aproperty owner@ as a possible
defendant, though Aproperty owner@ is excluded from
the actors mentioned in 95.002(2).  See Francis, 130 S.W.3d at 80, 83
(examining the applicability of Chapter 95 involving a negligent owner and the
same passive-owner argument).  However, Chapter 95 does not protect only Apassive@ property owners
against claims of negligence.  Tex. Civ.
Prac. & Rem. Code Ann. ' 95.003; Francis,
130 S.W.3d at 84.  When the property owner is negligent, liability will be
triggered under section 95.003 only when the actions of the property owner
satisfy both conditions of control and knowledge.  Tex. Civ. Prac. & Rem. Code Ann. ' 95.003; Francis,
130 S.W.3d at 84.  Applying this reasoning to the present case, we conclude
that Chapter 95 applies to Vanderbeek=s claim, and as a
result, the Hospital is shielded from liability under this statute unless each
of the two conditions required to trigger owner liability under section 95.003
are proved.

Moreover, in determining the applicability of Chapter 95,
we evaluate the actions of Vanderbeek and Humphrey Plumbing and not the actions
of the Hospital.  See Tex. Civ.
Prac. & Rem. Code Ann. ' 95.002.  Upon finding that Chapter 95
controls, then under section 95.003, a court reviews the Hospital=s actions in considering whether
those actions constitute the control and actual knowledge needed to impose
liability, but section 95.003 does not determine the applicability of Chapter
95.  Compare
id.
(governing applicability of Chapter 95), with id. ' 95.003 (imposing
prerequisites of control and knowledge to a property owner who is otherwise
subject to Chapter 95).








Vanderbeek
makes two additional arguments regarding the applicability of Chapter 95. 
First, he argues the Hospital=s summary-judgment evidence did not conclusively prove that
Chapter 95 applies.  This argument fails because, as explained above, the
Hospital conclusively established all elements of applicability required in
section 95.002.  Next, Vanderbeek argues that the trial court improperly
shifted the burden to him to prove that Chapter 95 does not apply.  In reviewing a
summary judgment, we must consider whether the Hospital carried the burden at
the trial court level by showing that there was no genuine issue of material
fact such that the judgment should have been granted as a matter of law.  KPMG
Peat Marwick v. Harriston County Hous. Fin. Corp., 988 S.W.2d 746,
748 (Tex. 1999).  Because the
Hospital conclusively proved that Chapter 95 applies by meeting the
requirements of section 95.002, summary judgment was properly granted, and the
trial court did not improperly shift the burden to Vanderbeek.

 

B.      Did the trial court err in
granting summary judgment because there is a genuine fact issue as to the
element of control?

 

Vanderbeek argues that even if Chapter 95 applies, the
trial court erred in granting summary judgment because the summary-judgment
evidence raises a fact issue on the element of control.  See Tex. Civ. Prac. & Rem. Code Ann. ' 95.003.  The
third section of Chapter 95 limits a property owner=s liability:

A property owner is not liable for personal injury, death, or property
damage to a contractor, subcontractor or an employee of a contractor or
subcontractor who constructs, repairs, renovates, or modifies an improvement to
real property, including personal injury, death, or property damage arising
from the failure to provide a safe workplace unless:

 

(1) the property owner exercises or retains some control over the
manner in which the work is performed, other than the right to order
the work to start or stop or to inspect progress or receive reports; and

 

(2) the property owner had actual
knowledge of the danger or condition resulting in the personal injury, death,
or property damage and failed to adequately warn.








Id. (emphasis
added).  Therefore,
control and actual knowledge are the two independent and necessary elements to
impose liability.  Kelly v. LIN Television of Tex., L.P., 27
S.W.3d 564, 567 (Tex. App.CEastland 2000, pet. denied).  

Control
can be contractual or actual.  Dow Chem. Co. v. Bright, 89 S.W.3d 602,
606 (Tex. 2002).  Neither party alleges contractual control; thus, in
this case we focus only on actual control.  Actual control is control over the
manner in which the work is performed.  Koch Ref. Co. v. Chapa, 11
S.W.3d 153, 155, 157 (Tex. 1999) (finding that a safety representative=s instruction to subcontractor=s employees in performing safer work
methods did rise to the level of actual control required for liability). 
Moreover, having control of the facilities does not satisfy the requirement for
control in section 95.003.  Dyall, 152 S.W.3d at 701 (en banc)
(concluding that success or failure of an attempt to eliminate a hazard in a
facility does not demonstrate Acontrol over the manner in which the work is performed@).  

The
record contains no summary-judgment evidence indicating that the Hospital 
controlled the timing, sequence, or manner of Vanderbeek=s work.  See Koch Ref. Co., 11
S.W.3d at 155, 157; Kelly, 27 S.W.3d at 571.  Vanderbeek
produced evidence that (1) the Hospital assumed the duty to take the sink out
of service, (2) a Hospital employee attempted to use the sink and discovered
that it would not drain, (3) Hospital maintenance employees were called to
unclog the sink, at which time drain cleaner may have been poured into the
sink, (4) a different Hospital employee was called on two occasions to unclog
the sink, (5) the sink was finally removed by Hospital employees, and (6) a
caustic substance remained in the pipe.  Vanderbeek argues that the Hospital
exercised control over the manner in which he performed his work in that, by
allowing a caustic substance into the pipe line, the Hospital changed the
manner in which he should perform his work to avoid injury.  If we were to
embrace this argument, we would be extending the definition of Acontrol@ beyond the plain
meaning of the statute.








Vanderbeek admits that no Hospital employee told him to
reconnect the pipe.  Likewise, Vanderbeek admits that he assumed nothing had
been placed in the sink since he first capped the pipes several weeks before. 
No Hospital employees were present when Vanderbeek reconnected the pipe. 
Although Vanderbeek=s evidence establishes that the Hospital
had control of the facility, as a matter of law the summary-judgment evidence
proves that the Hospital did not have control over the manner in which
Vanderbeek performed his job, which is required to satisfy section 95.003.  See
Tex. Civ. Prac. & Rem. Code Ann.
' 95.003(1); Dyall,
152 S.W.3d at 701B10.  Under the applicable standard of
review, we conclude that the trial court did not err by granting summary
judgment in favor of the Hospital.  

Accordingly, we overrule Vanderbeek=s issues and
affirm the trial court=s judgment.

 

 

/s/      Kem Thompson Frost

Justice

 

 

Judgment
rendered and Opinion filed January 31, 2008.

Panel
consists of Chief Justice Hedges and Justices Frost and Guzman.