# Supreme Court of Texas

No. 20-0451

Energen Resources Corporation,

*Petitioner,*

v.

Bryce J. Wallace, Elite Drillers Corporation, and United Fire & Casualty and Its Parent, United Fire Group, Inc.,

*Respondents*

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

**Argued September 16, 2021**

JUSTICE BUSBY delivered the opinion of the Court, in which Chief Justice Hecht, Justice Lehrmann, Justice Boyd, Justice Devine, Justice Bland, and Justice Huddle joined.

JUSTICE BLACKLOCK filed a concurring opinion, in which Justice Young joined.

Chapter 95 of the Civil Practice and Remedies Code limits a property owner's liability when an independent contractor or its employee, hired to "construc[t], repai[r], renovat[e], or modif[y]" an

improvement to the owner's property, brings a "claim for damages caused by negligence" that "arises from the condition or use" of that improvement. TEX. CIV. PRAC. & REM. CODE §§ 95.001(1), 95.002(2). In this case, we consider whether a negligence claim can arise from the condition or use of an improvement even when negligence elsewhere is alleged to have contributed to the plaintiffs' injuries. We conclude that it can so long as the other statutory requirements are satisfied.

In particular, Chapter 95 does not apply to a claim simply because the plaintiffs were injured by the condition or use of an improvement on which they were working. Rather, the "claim for damages caused by negligence" must "aris[e] from th[at] condition or use." *Id.* In other words, negligence that was a cause of the plaintiffs' damages must involve the condition or use of the improvement on which they were working.

Here, the defendant owner offered uncontroverted evidence—and the plaintiffs' own petition alleged—that there was negligence regarding a condition of the water well the plaintiffs were drilling and this negligence was a cause of their damages. Chapter 95 therefore applies. Because the defendant also proved conclusively that it could not be held liable under Chapter 95 given its lack of control over the work, the trial court properly granted summary judgment in its favor. We reverse the court of appeals' contrary judgment and reinstate the trial court's judgment.

## BACKGROUND

Petitioner Energen Resources Corporation obtained mineral leasehold rights to land in Reeves County, Texas, in 2011. In late 2013,

Energen hired Nabors Drilling Technologies USA, Inc. and New Prospect Company (NPC) to drill an oil well on the lease. After Nabors and NPC began work on the oil well, Energen contracted with Dubose Drilling, Inc. to complete a water well which, once finished, would facilitate the drilling and operations of the oil well.

Dubose was unsuccessful in its initial attempts to find a water source. Dubose later subcontracted with respondent Elite Drillers Corporation to complete the water well, and Elite assigned its president, respondent Bryce J. Wallace, to supervise the project. The wells were roughly five hundred feet apart from each other, and Energen continued drilling the oil well while Elite worked on the water well.

On January 14, 2014, a "gas kick"—an unexpected migration of gas from the reservoir to the wellbore—occurred at the oil well. Shortly thereafter, the oil well was shut in to prevent any further loss of natural gas. In the following days, reports on the oil well noted a loss of circulation and no returns.

On January 17, Wallace supervised as Elite's crew sent pressurized air into the water well to clear drilling mud. Upon noticing that the air pressure had increased substantially, Wallace shut off the air compressor, but the pressure continued to build. Wallace realized that natural gas was flowing out of the wellbore and warned those nearby to run. Moments later, the gas flowing from the water well caught fire and exploded. Wallace suffered severe burns and Elite's drilling equipment was damaged.

Elite, Wallace, and Elite's insurers United Fire & Casualty Company and United Fire Group, Inc. (collectively, "plaintiffs") brought

3

claims for negligence, gross negligence, and trespass to chattels against Energen.[1]   Energen filed a traditional motion for summary judgment, asserting that Chapter 95 of the Civil Practice and Remedies Code applied to plaintiffs' claims.  Energen also observed that if plaintiffs were contending a condition of the oil well—rather than the water well—gave rise to their claims, the water well's purpose to facilitate the oil well's production brought the claims within Chapter 95's ambit.  Finally, Energen contended that Chapter 95 barred the suit because Energen did not "exercis[e] or retai[n] some control over the manner in which the work [was] performed."  TEX. CIV. PRAC. & REM. CODE § 95.003(1).

In response, plaintiffs asserted that Chapter 95 did not apply because the improvement on which they were working (the water well) was not the same improvement from which their claims arose (the oil well).  Because the negligent drilling of the oil well caused their injuries, they argued that Chapter 95 did not apply.  Even if Chapter 95 applied, plaintiffs contended that they had raised a genuine issue of material fact regarding whether Energen exercised or retained some control over the drilling of the water well.

The trial court granted Energen's motion, rendering a take-nothing judgment.  The trial court did not specify which of Energen's theories for Chapter 95's applicability it found persuasive.

On appeal, plaintiffs raised two issues.  First, they asserted that Energen failed to establish that Chapter 95 applied as a matter of law.

---

[1] Elite and Wallace also sued Dubose, Nabors, and NPC.  They later dismissed their claims against Nabors and settled with Dubose and NPC, leaving Energen as the sole defendant here.

According to plaintiffs, Energen's main argument for Chapter 95's applicability—that the presence of natural gas was a "condition" of the water well—had not been raised in its motion for summary judgment. Second, if Chapter 95 applied, plaintiffs contended that they had raised a genuine issue of material fact with respect to Energen's control under section 95.003(1).

The court of appeals reversed the trial court's summary judgment and remanded for further proceedings. 603 S.W.3d 499, 501 (Tex. App.—El Paso 2020). Regarding the first issue, the court held that Chapter 95 did not apply. *Id.* at 514. Reasoning that Chapter 95 distinguishes between claims for negligent acts and conditions, the court began by examining the "true nature" of the claims. *Id.* at 511 (citing *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992)). It was undisputed that Elite and Wallace were working on the water well at the time of the explosion. *Id.* at 510. Therefore, the court concluded that Chapter 95 would apply only "if Energen conclusively established that the injuries arose from a premises defect of the Water Well." *Id.*

After examining the pleadings, the court held that plaintiffs not only alleged negligent activity at the oil well, but also raised a fact issue regarding whether that activity occurred contemporaneously with their injuries. *Id.* at 511–12. The court distinguished this case from *Keetch*, where a grocery-store customer slipped on a wet floor at least thirty minutes after an employee finished spraying plants nearby. *Id.* at 511, 513. Unlike the evidence in *Keetch*, which established a "complete absence of ongoing activity," the court thought the evidence here—in

5

particular, the reports of lost circulation and returns—raised a fact issue regarding contemporaneous negligent activity. *Id.* at 513–14.

The court of appeals concluded that Energen "failed to conclusively establish as a matter of law that no contemporaneous activity occurred on the Oil Well that resulted in the creation of a dangerous condition on the Water Well." *Id.* at 514. Because Energen did not prove conclusively that Chapter 95 applied, the court did not reach the second issue: "whether Wallace and Elite carried their burden on the challenged element of control." *Id.* at 514–15.

Energen filed a petition for review, which we granted.

## ANALYSIS

### I. Standard of review

"We review summary judgments de novo, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor." *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 811 (Tex. 2019). A party that moves for traditional summary judgment must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In addition, "[t]he nonmovant has no burden to respond . . . unless the movant conclusively establishes its cause of action or defense." *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999).

This case also involves a question of statutory construction, which is a legal one that we review de novo. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). "In construing a statute, our objective is to determine and give effect to the Legislature's intent." *City of San*

6

*Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). We begin by examining the plain meaning of the statute's language. *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389–90 (Tex. 2014). "If the statute is clear and unambiguous, we must read the language according to its common meaning 'without resort to rules of construction or extrinsic aids.'" *Id.* at 389 (quoting *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006)).

## II.    Energen conclusively established that Chapter 95 applies to plaintiffs' claims.

When Chapter 95 applies, it limits a real property owner's liability for common-law negligence claims that arise out of a contractor's or subcontractor's work on an improvement to the property.[2] As we recently observed, Chapter 95 applies to a claim

> (1) for damages caused by negligence resulting in personal injury, death, or property damage, (2) asserted against a person or entity that owns real property primarily used for commercial or business purposes . . . , (3) asserted by an owner, contractor, or subcontractor or an employee of a contractor or subcontractor, and (4) "that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement."

*Los Compadres Pescadores, L.L.C. v. Valdez*, 622 S.W.3d 771, 782 (Tex. 2021) (quoting TEX. CIV. PRAC. & REM. CODE § 95.002(2)). Here,

---

[2] For purposes of brevity, we use the words "work" and "working" as a shorthand reference to the acts of "construct[ing], repair[ing], renovat[ing], or modif[ying]" an improvement to which Chapter 95 applies.

the parties do not dispute that the first three requirements are met.[3] Their disagreement concerns the fourth requirement.

We recently addressed Chapter 95's fourth requirement in *Valdez*, where a property owner argued that Chapter 95 applied to claims alleging a dangerous condition of the "workplace." *Id.* at 783. Prior to *Valdez*, we held that a claim satisfies section 95.002's fourth requirement only if the claim "results from a condition or use of the *same improvement* on which the contractor (or its employee) is working when the injury occurs." *Ineos USA, L.L.C. v. Elmgren*, 505 S.W.3d 555, 567 (Tex. 2016) (emphasis added). Although our definition of "improvement" is broad, *see Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 49 (Tex. 2015), we concluded in *Valdez* that it is not so broad as to encompass the "entire workplace." 622 S.W.3d at 784.

Thus far, our Chapter 95 cases have focused on whether negligence regarding a condition or use of the "same improvement" on which the plaintiff was working gave rise to his claim. Consistent with this focus, plaintiffs contend that negligent drilling at the oil well— which, they argue, is a separate improvement from the water well— caused their injuries. Because it is undisputed that plaintiffs were hired to complete only the water well, they contend that the improvement

---

[3] Although the parties do not dispute that Energen is a "property owner" for purposes of Chapter 95, *see* TEX. CIV. PRAC. & REM. CODE § 95.001(3), we note other courts have held that a mineral lessee is a property owner. *E.g.*, *Painter v. Momentum Energy Corp.*, 271 S.W.3d 388, 397 (Tex. App.—El Paso 2008, pet. denied) (concluding owner of leasehold interest in mineral property was "property owner" under Chapter 95); *Francis v. Coastal Oil & Gas Corp.*, 130 S.W.3d 76, 84 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (determining mineral lessee was "property owner" because "[w]ell-settled law holds that a mineral lease conveys a fee simple determinable interest in real property").

8

from which their claim arose is different from the improvement they were hired to construct. Energen counters that Chapter 95 applies because plaintiffs' injuries also arose from a condition of the water well improvement.

For a claim to fall within Chapter 95's ambit, the statutory text requires more than Energen suggests. Specifically, *negligence* regarding "the condition or use" of the improvement on which plaintiffs were working must be a cause of their damages. This requirement is apparent from the text of the statute itself, and it is confirmed by the common law.

Chapter 95 applies "only to a claim . . . that arises from" an improvement's "condition or use." TEX. CIV. PRAC. & REM. CODE § 95.002(2). The statute defines a "claim" using the essential common-law elements of negligence, causation, and damages: a "claim for damages caused by negligence." *Id.* § 95.001(1).[4] We have explained that the phrase "arises from" means "caused by." *Abutahoun*, 463 S.W.3d at 48. Read together, sections 95.001 and 95.002 provide that Chapter 95 applies only when the sequence of negligence causing damages that is the Legislature's chosen definition of claim "arises from the condition or use" of the improvement on which the plaintiffs were working.[5]

---

[4] The definition includes only the factual elements of the claim. It does not include duty, which is a legal question. *See Del Lago Partners, Inc. v. Smith,* 307 S.W.3d 762, 767 (Tex. 2010).

[5] We do not agree with our concurring colleagues that we may substitute the phrase "injurious accident" for the statutory term "claim" and the Legislature's supplied definition of that term. *Cf. post* at 3 (Blacklock, J.,

9

As we observed in *Abutahoun*, the statutory phrase "condition or use" indicates that Chapter 95 applies to "all negligence claims that arise from either a premises defect or the negligent activity of a property owner or its employees." *Id.* at 50. It is not enough for a plaintiff's damages to arise from the condition or use of an improvement if such condition or use does not involve the essential element of negligence. There must also be a causal connection between the plaintiff's damages and negligence regarding the condition or use of the improvement on which the plaintiff was working. *See id.* at 48 ("Chapter 95 applies to a negligence claim that 'arises from,' or is caused by, 'the condition or use of an improvement . . . where the contractor or subcontractor . . . modifies the improvement.'").

The statutory rule that Chapter 95 applies only if there is a connection between the damage-causing negligence and the condition or use of the improvement on which the plaintiff was working matches the common-law rule that a landowner is not liable unless there is such a connection. This correspondence is informative because Chapter 95 does not create a new cause of action; rather, it limits liability for common-law negligence claims when it applies. *See* TEX. CIV. PRAC. & REM. CODE § 95.003 (providing that property owner "is not liable . . . unless" certain requirements are met).

Under the common law, "[t]he general rule is that an owner or occupier does not have a duty to see that an independent contractor

---

concurring). Chapter 95 does not task courts with determining the "originating cause" of a claim. *Id.* at 3. Rather, it defines what claim "means," *see* TEX. CIV. PRAC. & REM. CODE § 95.001(1), and that definition does not refer to either injury or accident.

performs work in a safe manner." *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985). Thus, the owner generally is not liable for dangerous conditions or activities "arising out of the independent contractor's work." *Clayton W. Williams, Inc. v. Olivo*, 952 S.W.2d 523, 528 (Tex. 1997). But if the owner retains or exercises "supervisory control . . . relate[d] to the condition or activity that caused the injury," it "can be liable for negligence in exercising or failing to exercise control over the part of the independent contractor's work that created the dangerous condition" or constituted the negligent activity. *Id.*; *see also Redinger*, 689 S.W.2d at 418 (adopting RESTATEMENT (SECOND) OF TORTS § 414 (1977)).[6]

Our recent opinions have likewise understood Chapter 95 to require that the damage-causing negligence arise from the condition or use of the improvement on which the plaintiff was working. As we explained in *Endeavor Energy Resources, L.P. v. Cuevas*, when a negligent-activity claim involves only one party's negligence, the claim "arises from" the "use" of an improvement "if the one negligent act occurs contemporaneously with the use of the improvement." 593 S.W.3d 307, 311 (Tex. 2019) (citing *Abutahoun*, 463 S.W.3d at 50).[7] The same is true

---

[6] Chapter 95 preserves this common-law control requirement, but it narrows liability by adding a further requirement: that the owner "had actual knowledge of the danger or condition . . . and failed to adequately warn." TEX. CIV. PRAC. & REM. CODE § 95.003(2). We discuss these requirements in Part III below.

[7] *Endeavor* involved a negligent-hiring claim, which "requires proof of two separate negligent acts." 593 S.W.3d at 311. In that situation, we recognized that if at least "one of the negligent acts involves the contemporaneous use of an improvement," Chapter 95 applies "regardless of

of a premises-defect claim, as we observed in *Valdez*: "For chapter 95 to apply, it is not enough that a dangerous condition" the defendant negligently failed to warn of or make safe "existed on the premises . . . . Instead, the danger must arise from the condition (or use) of 'an improvement' . . . on which the claimant was working." 622 S.W.3d at 783. Thus, *Endeavor* and *Valdez* confirm that Chapter 95 applies only where there is some negligence involving the condition or use of an improvement.

Here, Energen asserts that a condition—rather than a use—of the water well caused plaintiffs' damages. As we noted in *Endeavor*, "[C]hapter 95's reference to a claim arising from 'the condition . . . of an improvement to real property' contemplates a claim for premises liability." 593 S.W.3d at 310. Premises liability is a "species of negligence"[8] that "encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010). A "condition" is "an intentional or an inadvertent state of being." *Abutahoun*, 463 S.W.3d at 49 (quoting *Sparkman v. Maxwell*, 519 S.W.2d 852, 858 (Tex. 1975)). And something is a condition of an improvement if it "affect[s] the 'state of being' of" that improvement. *Valdez*, 622 S.W.3d

---

when the other negligent act occurred or whether it involved the use of an improvement." *Id.* For a negligent-hiring claim, Chapter 95 does not require that "the *property owner's* negligence involve the use of the improvement." *Id.* (emphasis added). But we did not suggest in *Endeavor* that Chapter 95 would apply even if none of the allegedly negligent acts involved the use of the improvement on which the plaintiff was working. *Cf. post* at 5 (Blacklock, J., concurring).

[8] *Abutahoun*, 463 S.W.3d at 50.

at 785. In sum, Chapter 95 applies where negligence affecting the condition of an improvement on which plaintiffs were working was a cause of their damages.

Applying these principles, we conclude Energen has conclusively established that Chapter 95 applies. The record includes undisputed evidence that plaintiffs were hired to construct the water well, so it is the relevant improvement. *See id.* at 784. In their petition, plaintiffs alleged that "Energen . . . failed to exercise reasonable care in relation to the defective and/or dangerous conditions in the drilling and completion of the Water Well."[9] They also alleged that a "high volum[e] of natural gas" built up in the water well and ignited, resulting in an explosion that injured Wallace and damaged Elite's equipment.[10] In other words, plaintiffs' own petition alleges that their damages were caused by negligence arising from a dangerous condition of the water

---

[9] For summary judgment purposes, Energen can rely on plaintiffs' allegations to demonstrate the applicability of Chapter 95. *See Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 818–19 (Tex. 2021).

[10] We do not suggest that a plaintiff's allegations will be dispositive in determining whether Chapter 95 applies. Rather, a defendant moving for summary judgment that Chapter 95 applies may offer evidence proving that the plaintiff's claim arises from negligence regarding the condition or use of the improvement on which the plaintiff was working. In this particular case, however, the plaintiffs' own allegations demonstrate that Chapter 95 applies. The concurrence raises the concern that a future plaintiff could "plead around" the statute by alleging negligence unconnected to the condition or use of the improvement that caused the plaintiff's injury. *See post* at 5 (Blacklock, J., concurring). But such an allegation would not even support liability under the common law, which as we have explained generally imposes no duty on a landowner regarding dangerous conditions or activities arising from an independent contractor's work on an improvement.

13

well on which they were working. *Cf. Catholic Diocese of El Paso v. Porter*, 622 S.W.3d 824, 829 (Tex. 2021) (discussing common-law duties of reasonable care that property owner owes invitees and licensees regarding dangerous conditions on land).[11]

Plaintiffs respond that the oil well and water well are separate improvements, there is a genuine issue of material fact regarding whether their injuries occurred as a result of contemporaneous negligent activity at the oil well on which they did no work, and thus Chapter 95 does not apply. The court of appeals agreed, reasoning that it had to determine whether the "true nature" of plaintiffs' claims were for "premises defect arising from the Water Well or . . . negligent activity arising from the Oil Well." 603 S.W.3d at 511. The court concluded there was a fact issue regarding whether "the Water Well was a mere conduit for the end result of" contemporaneous negligent drilling activity at the oil well. *Id.* at 513.

We disagree with the court of appeals' approach for two reasons. First, although Chapter 95 distinguishes between claims for negligent activities and those for premises defects, it applies to both types of claims. *E.g.*, *Abutahoun*, 463 S.W.3d at 50–51. Thus, in determining Chapter 95's applicability, the dispositive issue is not whether the claim should truly be characterized as one for negligent activity or premises defect. Rather, as previously discussed, what matters is whether there

---

[11] Here, Energen—which the parties agree was the property owner—hired Dubose as a general drilling contractor. Dubose then subcontracted with plaintiff Elite. The parties do not address the precise nature of the duty Energen would owe Elite and its president Wallace under the common law, and our disposition does not require us to consider that issue.

14

was negligence regarding the "condition or use" of the improvement on which plaintiffs were working and, if so, whether that negligence was a cause of plaintiffs' damages.

Second, although Chapter 95 requires a causal connection between negligence involving the improvement and the plaintiff's damages, we have held that this negligence need not be the "*only* cause" of the damages. *Endeavor*, 593 S.W.3d at 311.[12] Because plaintiffs alleged additional negligence at the oil well, the court of appeals concluded that was sufficient to raise a fact issue "as to whether contemporaneous drilling on the Oil Well caused the injuries that were sustained by [plaintiffs] while they worked on the Water Well." 603 S.W.3d at 513. But whether contemporaneous or not, negligence away from the water well that contributes to plaintiffs' damages does not negate the conclusion—rooted in plaintiffs' own pleadings—that negligence at the water well on which they worked also caused those same damages.

We also find unpersuasive plaintiffs' argument that they did not allege a premises-defect claim with respect to the water well because their petition contains no assertions that the water well itself was defective. Under the Texas Tort Claims Act (TTCA), we have held that a claim for a "condition" of tangible personal property "must [contain] an allegation of 'defective or inadequate property.'" *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 388 (Tex. 2016) (quoting *Salcedo v. El*

---

[12] Thus, we agree with our concurring colleagues that Chapter 95's use of the phrase "arises from" does not "require courts to identify a sole causal source to the exclusion of all others." *Post* at 3 (Blacklock, J., concurring).

15

*Paso Hosp. Dist.*, 659 S.W.2d 30, 32 (Tex. 1983)). We have used decisions regarding the TTCA to inform our analysis of Chapter 95. *See Abutahoun*, 463 S.W.3d at 49.

Unlike Chapter 95, however, the TTCA distinguishes between claims for the "condition or use" of tangible personal property and claims for a premises defect. *See id.* at 49 n.7; *see also* TEX. CIV. PRAC. & REM. CODE §§ 101.021, 101.022(a). The *Sampson* case, in which a professor tripped over an electrical cord stretched across a walkway, illustrates this distinction. *See* 500 S.W.3d at 390. There, the claim was not one for the "condition" of the cord because the professor did not allege that the cord was defective. *Id.* at 391. Rather, it was the "static placement" of the cord—a "condition" of the real property—that gave rise to the professor's claims, and so we characterized the professor's claim as one for a premises defect. *Id.* at 390–91.

In enacting Chapter 95, the Legislature addressed a property owner's liability to independent contractors for negligence claims regarding both premises defects and negligent activities. *See Abutahoun*, 463 S.W.3d at 49–50 (citing *Redinger*, 689 S.W.2d at 417). "[A] premises defect claim is based on the property itself being unsafe." *Shumake*, 199 S.W.3d at 284; *see also Valdez*, 622 S.W.3d at 783. Such a claim can be based on negligence regarding a "dangerous condition" of the property without also showing a "defect" thereof. *Valdez*, 622 S.W.3d at 784. For example, the concrete pilings in *Valdez* were not alleged to be defective, but we determined that Chapter 95 applied because an energized power line hanging overhead was a "condition" of the pilings. *Id.* at 785–86.

16

Similarly, the water well here was not alleged to be defective; rather, the natural gas in the water well was a "dangerous condition" that, according to plaintiffs, Energen negligently failed to "become aware of, rectify[,] and communicate." Because plaintiffs alleged negligence regarding a dangerous condition of the water well on which they were working, their arguments for avoiding Chapter 95's application fall short. For these reasons, we conclude Energen conclusively established that Chapter 95 applies.

## III. Because Energen conclusively proved it did not exercise or retain control over plaintiffs' work, it cannot be liable under Chapter 95.

When Chapter 95 applies, a plaintiff's "sole means of recovery" is section 95.003, and the plaintiff has the burden of proving both prongs of that section at trial. *Abutahoun*, 463 S.W.3d at 51–52. The plaintiff must demonstrate that the property owner (1) "exercise[d] or retain[ed] some control over the manner in which the work [was] performed" and (2) "had actual knowledge of the danger or condition resulting in the . . . personal injury . . . or property damage and failed to adequately warn." TEX. CIV. PRAC. & REM. CODE § 95.003.

As a preliminary matter, we note that because Energen filed a traditional motion for summary judgment on the first prong of section 95.003, it had the burden to establish conclusively that it neither exercised nor retained control over plaintiffs' work. A no-evidence motion for summary judgment immediately shifts the burden to the nonmovant. *See* TEX. R. CIV. P. 166a(i). With a traditional motion for summary judgment, however, the nonmovant has no burden to respond "unless and until" the movant conclusively establishes its cause of action

17

or defense as a matter of law. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989); Tᴇx. R. Cɪᴠ. P. 166a(c). Only after the movant does so will the nonmovant have the burden of "rais[ing] a genuine issue of material fact." *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018).

The court of appeals incorrectly suggested that if Energen established Chapter 95's applicability, the burden would be on plaintiffs to satisfy both prongs of section 95.003. *See* 603 S.W.3d at 514–15. That would be true if a no-evidence motion for summary judgment were involved, *see Ineos*, 505 S.W.3d at 568, but Energen did not file such a motion here. Energen moved for traditional summary judgment, and therefore it was Energen's burden to establish conclusively that it neither exercised nor retained control over the manner in which plaintiffs performed their work. *See, e.g., Kelly v. LIN Television of Tex., L.P.*, 27 S.W.3d 564, 570–71 (Tex. App.—Eastland 2000, pet. denied).

In the trial court, Energen's only grounds for summary judgment were that Chapter 95 applied to plaintiffs' claims and that it neither exercised nor retained control over plaintiffs' work under section 95.003(1). In this Court, Energen also asserts that it did not have "actual knowledge" of a danger or condition under section 95.003(2). But because Energen did not move for summary judgment on the latter prong of section 95.003, we do not consider whether Energen had actual knowledge. *See State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) ("Summary judgment may not be affirmed on appeal on a ground not presented to the trial court in the motion.").

To establish "control" under section 95.003(1), evidence of a property owner's "right to order the work to start or stop or to inspect

18

progress or receive reports" is insufficient. TEX. CIV. PRAC. & REM. CODE § 95.003(1). Control may be shown with evidence that (1) a contract assigned control to the property owner or (2) the property owner "actually exercised control" over the manner in which the work was performed. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002).[13] This control must extend to "the means, methods, or details of the independent contractor's work . . . such that the [independent] contractor is not entirely free to do the work in his own way." *AEP Tex. Cent. Co. v. Arredondo*, 612 S.W.3d 289, 295 (Tex. 2020) (cleaned up).

Here, Energen conclusively established that it neither exercised actual control nor retained contractual control over plaintiffs' work. The summary judgment record shows that it was Dubose—not Energen— that subcontracted with Elite. Energen also provided the deposition of plaintiff Wallace, who testified that he had never talked to anyone with Energen. In fact, Wallace testified that the only entity from which he received information both before and after commencing drilling work on the water well was Dubose.

Because Energen conclusively established that section 95.003(1) was not satisfied, the burden shifted to plaintiffs to raise a fact issue regarding control. Plaintiffs responded with the deposition of Energen's senior geologist, who testified that he investigated possible water

---

[13] *Bright* is not a Chapter 95 case. But in analyzing the control prong of section 95.003, we have consulted our decisions regarding a property owner's duties to independent contractors over whose work the property owner has "some control." *See Ineos*, 505 S.W.3d at 561 (citing *Redinger*, 689 S.W.2d at 418). One court of appeals has suggested that section 95.003(1) is a codification of our holding in *Redinger*. *See Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 688, 699 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

19

sources and recommended to Energen's senior engineer that the water well be drilled deeper. But merely "mak[ing] suggestions or recommendations which need not necessarily be followed, or . . . prescrib[ing] alterations and deviations," does not establish control. *Koch Refin. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999) (per curiam) (quoting RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (1965)). Nor does "direct[ing] when and where the work [will be] done." *Arredondo*, 612 S.W.3d at 295. Thus, plaintiffs' evidence does not raise a fact issue regarding control.

We conclude that Energen conclusively established that it neither exercised nor retained control over the manner in which plaintiffs performed their work, and plaintiffs failed to raise a fact issue regarding control. As a result, Energen cannot be held liable under section 95.003.

## CONCLUSION

As we recognized in *Endeavor*, the condition or use of the improvement on which a plaintiff was working need not be the "*only* cause" of that plaintiff's damages for Chapter 95 to apply. 593 S.W.3d at 311. But there must be negligence regarding the improvement's condition or use, and such negligence must be a cause of the plaintiff's damages. Because plaintiffs alleged that Energen's negligence regarding a dangerous condition of the water well caused their damages, their claims are subject to Chapter 95. Energen conclusively established that it lacked the control over plaintiffs' work necessary to hold it liable under section 95.003, and plaintiffs failed to raise a fact issue. We therefore reverse the court of appeals' judgment and reinstate the trial court's take-nothing judgment.

20

_____
J. Brett Busby
Justice

**OPINION DELIVERED:** March 11, 2022